**STATE of Missouri, Respondent,**

v.

**Michael BOLLMANN, Appellant.**

**Michael BOLLMANN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 55653, 57228.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 28, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1991.

Application to Transfer Denied Sept. 10, 1991.

David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

This is a consolidated appeal from convictions for forcible rape, and burglary in the first degree, and from the denial of defendant's Rule 29.15 motion. Defendant was sentenced as a persistent offender to consecutive terms of thirty years and fifteen years, respectively, for a total of forty-five years. We affirm his convictions and the denial of his Rule 29.15 motion.

Defendant does not question the sufficiency of the evidence. However, since defendant's primary defense was mistaken identity, it may help to relate the facts in some detail. The facts most favorable to the verdict are as follows: On the night of July 2, 1987, victim was asleep in her apartment. She had locked the deadbolt on her front door, but only secured the screen door to her second-floor apartment balcony. Sometime in the night, victim awoke to see a naked man standing in her bedroom doorway. The man, whom victim later identified as defendant, took three strides across the room and leapt on her as she lay in bed. Placing a sharp object to her throat, defendant threatened to kill her if she did not remain quiet. He then attempted to have sexual intercourse with her. Victim resisted the attack. During the struggle, defendant struck her numerous times in the face with his fist, causing an injury to her eye. At one point during the assault, defendant told victim he had recently gotten out of prison and apologized for his attack. He eventually succeeded in effecting sexual penetration.

After completing his assault, defendant got up from the bed and walked out of the bedroom. Victim followed him. Defendant picked up a pair of bluejean shorts from beside the door to the balcony and got dressed. Victim had a clear view of him from as close as a foot away in the early morning light. Defendant left by way of the balcony, stating that he "came in that way."

After defendant left, victim discovered that her purse had been rifled and $25 was missing. When the police arrived, she described her attacker as being a young, short, slender white man with a tattoo on his arm. Victim subsequently viewed a lineup containing defendant, identified him from that lineup, and repeated that identification in court.

At the time of the crime, defendant was staying with a friend at an apartment in the same complex in which victim's apartment was located. Employees at the complex became suspicious of defendant because he fit the description of victim's attacker; they informed police officers of their suspicions. When police arrived at that apartment and stated the reason for their presence, defendant climbed out a back window, attempting to evade the police. He was subsequently caught by a citizen after a short foot-chase. When captured, defendant responded to the citizen's statement that the police wanted to talk to him by stating that he had "already seen the police."

The police recovered a pair of cutoff bluejean shorts from the apartment where defendant was staying. Defendant identified the shorts as his. Defendant has four tattoos, some of which are on his arms and shoulder. Defendant testified in his own defense and denied any involvement in the crime. He further testified he had obtained all of his tattoos in 1983 while in Algoa prison.

Defendant was afforded an evidentiary hearing on his Rule 29.15 motion. The primary issue was whether or not defendant was properly defended on the issue of his tattoos.

Defendant complains in his first point relied on that the trial court erred in denying his objection to prosecutorial inquiry into whether or not defendant explained to the police when they arrested him that his flight was caused by his fear of drug dealers collecting on a debt. He testified at trial that this was the reason for his flight. He contended that the inquiry impermissibly referred to his assertion of his Fifth Amendment right to silence. The complained of inquiry was as follows:

[BY DEFENDANT]: I had owed these people some money[,] and a couple days before I went and talked to them and told them I'd get their money[,] and I still owed them that a week before, maybe two weeks. And—

By Prosecutor Geiler:

Q: Okay.

A: So I figured, you know, when somebody knocked on the door that was them.

Q: Okay. And they knew where you lived?

A: Yeah, I think so.

Q: They delivered drugs to your house?

A: They had been over and drank a couple beers.

Q: Okay, and so—but the day you ran you hadn't talked to anybody, any of those drug dealers?

A: No.

Q: And you didn't tell the police that you were running from drug dealers, did you?

A: I don't think—I was kind of like freaking out on there, you know.

MS. KELLY [Defense counsel]: Your Honor, I'd object ...

██ In Missouri, it is permissible for the State to use a criminal defendant's immediate post-arrest, pre-*Miranda* warning silence for purposes of impeaching his testimony when a neutral expectancy of an exculpatory statement exists as a result of defendant's testimony, and defendant's silence is probative of inconsistencies in that testimony. *State v. Antwine*, 743 S.W.2d 51, 69 [22] (Mo.banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

██ Defendant refuses to concede that he had not been read his *Miranda* rights. He therefore argues that, once he was taken into custody, *Miranda* warnings would have to precede any interrogation. However, the record is silent as to when defendant was advised of, or asserted his right to, remain silent. Further, the prosecutor's inquiry was not addressed to defendant's silence during interrogation, but rather to defendant's silence when the citizen who captured him returned him to the police. It seems apparent that defendant had an opportunity even prior to his arrest, and certainly prior to his *Miranda* warnings, to explain his flight to the police.

Defendant next contends that the neutral expectancy of an exculpatory statement does not exist in this case. He maintains that it is unreasonable to expect that a defendant would explain to the police that he was fleeing from his drug dealer creditors, because that might subject him to criminal prosecution. Defendant is incorrect. In *Antwine*, 743 S.W.2d at 51, such an expectation existed where defendant contended he murdered two victims in self-defense, because they were attempting to prevent him from going to the police in order to get out of their drug operation. The defendant in that case was silent upon his arrest. In this case, it seems reasonable that if defendant had a reason for fleeing from the police, he would express it to them. Point denied.

In his second point on appeal, defendant asserts the trial court erred in not granting his motion for new trial based on the prosecution's failure to disclose defendant's criminal record detailing his various tattoos. Defendant argues that this record established the date defendant had gotten these tattoos, and that that information would have been decisive in the jury's consideration of defendant's own testimony to that effect.

Victim initially stated to the police, and in a deposition, that she saw one tattoo on the man who assaulted her, and that tattoo was the figure of an anchor. At trial, victim testified she recalled only one tattoo, and she was not sure what it looked like. Defendant had four tattoos, none of them an anchor. However, there was at least one tattoo on defendant's arm or shoulder, which was where victim stated the tattoo she saw was located. At trial, the prosecutor stated to the jury that it was possible that defendant had changed an anchor tattoo to something else.

The matter of the record of defendant's tattoos came to light when the evidence was in, and the jury was considering its verdict. The State offered defendant's criminal record to prove he was a prior offender, and the record describing defendant's tattoos was discovered therein. This information was apparently a shock to the prosecutor, defense attorney, and to the court. Defendant had filed the ordinary and usual discovery motion, but this information was not given.

■ The prosecution must disclose evidence favorable to the accused where the evidence is material either to the defendant's guilt or punishment. *State v. Schlup*, 785 S.W.2d 796, 800 [6] (Mo.App. 1990). A constitutional error occurs in the failure of the State to disclose evidence only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial. *Id.* The burden of showing the materiality of the evidence which was not disclosed falls upon the defendant. *Id.* at [7].

■ In this case, defendant failed to show that the criminal records concerning his tattoos, if admitted into evidence, would have had a reasonable probability of affecting the outcome of the trial. Victim testified that defendant was the man who raped her. The evidence indicates there was no reason to believe the presence of any tattoo was an element of her identification of defendant. The tattoos were not visible during the lineup when victim identified defendant. Defendant appeared in court wearing a shirt which covered his tattoos, and victim identified defendant in court. Further, defendant's height, build, hair color and general appearance closely matched the description victim gave to the police.

Additionally, defendant introduced other evidence to the jury concerning the presence of his tattoos on the date of the crime. Defendant testified to the number of his tattoos, their appearance, and when and where he obtained them. The lifeguard at the apartment complex testified that defendant had more than one tattoo, and specifically described the one on defendant's shoulder to the jury. Defendant has failed to sustain his burden of proof on this point on appeal.

■ In defendant's third point, which concerns his post-conviction motion, he contends he received ineffective assistance of counsel. He complains that trial counsel presented no evidence concerning the dates he obtained the tattoos, and that trial counsel did not recognize the significance of these prison records. For the reasons stated above, we do not believe defendant showed his counsel's performance was deficient, and that deficiency prejudiced defendant's defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), and *Sidebottom v. State*, 781 S.W.2d 791, 795 [3–5] (Mo.banc 1989), *cert. denied*, — U.S. —, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990).

The convictions and sentences of defendant are affirmed, and the denial of his Rule 29.15 motion is also affirmed.

GARY M. GAERTNER, P.J., and AHRENS, J., concur.