**STATE of Missouri, Plaintiff–Respondent,**

v.

**Alfred L. SMITH, Defendant–Appellant.**

**Alfred L. SMITH, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 16934, 17409.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 23, 1992.

Motion for Rehearing or Transfer
to Supreme Court Denied
Feb. 11, 1992.

Application to Transfer Denied
March 24, 1992.

---

J. Gregory Mermelstein, Columbia, for defendant-appellant, movant-appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent, respondent.

MAUS, Judge.

A jury found defendant Alfred L. Smith guilty of the class B felony of robbery in the second degree. § 569.030. The trial court found Smith to be a prior, persistent and a class X offender. As such Smith was sentenced to imprisonment for ten years. Smith's motion for postconviction relief was denied. His appeals from the conviction and the denial of his postconviction motion have been consolidated.

The following is a summary of the facts. Alfred L. Smith, a black male, and Jack Passantino, a white male, were "drinking buddies". They met on the morning of December 19, 1989, at the "Mission" in Joplin, Missouri. From there, they went together to the OK Bar and drank a beer. They knew they could not get into the Mission since they had been drinking, so they decided to rent a room at the Villa Motel for the night as they had done before. They walked to the Villa Motel from the OK Bar. On the way, they bought a pint of vodka and drank it. They stayed at the motel for a short period. Then they went to a local convenience store and

bought another bottle of vodka. They took it back to the motel and drank it.

About 7:00 p.m., the two went to the Quik Stop convenience store. Roxanne Palmer was working at the Quik Stop. Passantino first entered the store alone. He went to the rest room. Then, he sat down at a booth in the store. About three minutes later, Smith entered the store. Smith bought a pack of Alpine cigarettes. Then he went over to the front doors. He stood there holding the doors, peering outside. While Smith was at the doors, Passantino put his hand in his pocket as if he had a gun. He said to the clerk, "Give me all the money or I'm going to kill you." The clerk gave him all the money. Passantino stuck the money in his pocket. Smith then went outside. Passantino said to the clerk, "If you call the police, I am going to kill you." Passantino and Smith left together.

The clerk then called the police. While the police were at the Quik Stop investigating the robbery, the police dispatcher radioed them with the following additional information. An employee of a taxicab company called the police and advised them that he had received a suspicious call requesting a bottle of liquor from two men who were at the Villa Motel. The caller said the voice was that of a black male and he could hear a white male's voice in the background. Since the police were looking for a white male and a black male in connection with the robbery, the officers left the Quik Stop and went to the Villa Motel.

There they knocked on the door to the men's motel room. Passantino opened the door. An officer, looking through a window, observed Smith reaching underneath the mattress. Upon entering the room, an officer lifted the mattress looking for a weapon. There he found approximately $101.00. The officer also confiscated $19.00 and some change from Smith's person. During an inventory search, $90.00 was taken from Passantino. The manager reported $209.18 missing from the Quik Stop. A total of $210.77 was taken from Passantino and Smith. Before Smith's trial, Passantino, pursuant to a plea bargain agreement, pled guilty to the robbery.

At Smith's trial, Smith did not testify. Smith called Passantino as his only witness. Passantino testified that he alone committed the robbery without the help of Smith. He further testified that Smith did not know Passantino was going to rob the Quik Stop. As stated, the jury found Smith guilty. He was sentenced as a prior, persistent and a class X offender to imprisonment for ten years. Smith states four points on appeal.

▇▇▇ By his first point, Smith contends the evidence is insufficient to sustain his conviction. The essence of his argument to support that point is

"[t]he evidence showed the robbery was committed solely by Jack Passantino, who robbed the Quik Stop without the assistance or prior knowledge of appellant."

In determining that point, this court must consider the evidence and all reasonable inferences readily drawn from such evidence in the light most favorable to the verdict and disregard all contrary evidence and inferences. *State v. Guinan*, 665 S.W.2d 325 (Mo. banc 1984), cert. denied, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). Further, it was within the province of the jury to believe or disbelieve the testimony of Passantino. *State v. Rodney*, 760 S.W.2d 500 (Mo.App.1988).

▇▇ Passantino and Smith went to the Quik Stop together. Passantino went into the Quik Stop first. Approximately three minutes later, defendant Smith entered the Quik Stop. Smith purchased cigarettes. Passantino then demanded the money. Smith stood only four feet away looking onto the parking lot, holding the doors. After Passantino took the money from the clerk, the two left together. At the motel room, Smith ordered a bottle of liquor. When the officers came to the motel room, Smith stuffed $101.00 under a mattress. There was evidence from which a jury could reasonably infer the two men planned and committed the robbery together. Smith's first point has no merit.

▇▇ In his second point relied on, the defendant contends:

"The trial court plainly erred in failing to declare a mistrial, sua sponte, following:

(1) The state's cross-examination questioning of Jack Passantino as to whether he had heard appellant at the time of his arrest say anything to police or 'protest' to police by saying, 'Hey, I wasn't involved in this,' and

(2) The state's closing argument asking whether appellant ever protested his innocence and stating that Jack Passantino did not hear appellant protest his innocence,

... since the state's cross-examination and argument constituted an impermissible comment on appellant's right to silence at arrest, an impermissible reference to appellant's failure to testify, and an impermissible use of appellant's silence against him as evidence of guilt. ..."

By his second point, Smith seeks review under the plain error doctrine. Rule 30.20. However, it is not necessary to consider the limitations of such review. Smith's second point, even if preserved for appellate review, is meritless.

In support of this point, Smith relies upon the doctrine enunciated in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, the limitations of that doctrine have been recognized.

"In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony." *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490, 494 (1982).

The law in this state has been authoritatively and succinctly stated in *State v. Hill, Hill v. State*, 823 S.W.2d 98 (E.D. Nos. 58247 and 59660, filed December 3, 1991):

"The state may not make use of a criminal defendant's postarrest silence where that silence is the result of an exercise of a defendant's constitutional right. *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245 [49 L.Ed.2d 91]. Where the state has induced silence by implicitly assuring a defendant that his silence would not be used against him, it is fundamentally unfair for the state to refer to that silence. *Fletcher v. Weir*, 455 U.S. 603, 605, 102 S.Ct. 1309, 1311 [71 L.Ed.2d 490] (1982). However, where that silence has not been implicitly occasioned by a *Miranda* warning, or by an express assertion of the Fifth Amendment right to silence, a state may permit cross-examination as to postarrest silence without violating due process when a defendant chooses to take the stand. *Id.* 455 U.S. at 607, 102 S.Ct. at 1312.

...

Missouri allows the state to use a defendant's 'immediate post-arrest, pre-Miranda warning silence for purposes of impeaching his testimony when a neutral expectancy of an exculpatory statement exists as a result of a defendant's testimony and defendant's silence is probative of inconsistencies in that testimony.' *State v. Antwine*, 743 S.W.2d 51, 69 (Mo. banc 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755 [100 L.Ed.2d 217] (1988). *Where a defendant later offers an explanation for his conduct under circumstances suggesting he would naturally have given the explanation earlier, if true, his previous silence may be used for impeachment purposes if his silence was not the result of an exercise of a constitutional right. State v. Willis*, 764 S.W.2d 678, 681 (Mo.App.1988). *Antwine* sets out current Missouri law. Cases pre-dating *Antwine* may not be relied on. *State v. Cummings*, 779 S.W.2d 10, 12 (Mo.App.1989)." *Id.* at 100, 101. (Emphasis added.)

Also see *State v. Bollmann*, 813 S.W.2d 22 (Mo.App.1991); Annot., *Silence—Impeachment*, 35 A.L.R.4th 731 (1985).

It must be observed that in *Fletcher, Antwine* and *Hill*, the defendant, through his own testimony, offered an explanation

for his conduct and the state established the defendant's incriminating silence by cross-examination. In this case, Smith, through the testimony of Passantino, offered the exculpatory explanation that he had nothing to do with the crime. The nature of this explanation presented by the defendant raises the reasonable expectation that he would naturally have given this explanation earlier if it were true. Under these circumstances, this court finds the principles of *Fletcher, Antwine* and *Hill* to be applicable. See Annot., *Impeachment—Witness' Prior Silence*, 20 A.L.R.4th 245 (1983).

As in *Fletcher, Antwine* and *Hill*, "the record does not indicate that [Smith] received any *Miranda* warnings during the period in which he remained silent immediately after his arrest." *Fletcher*, 455 U.S. at 605, 102 S.Ct. at 1311, 71 L.Ed.2d at 493. There was no error in the state's cross-examination of Passantino or the state's closing argument mentioned in Smith's second point. That point is denied.

■ The defendant's third point is:

"The trial court plainly erred in failing to declare a mistrial, sua sponte, following the state's cross-examination of Jack Passantino using the transcript of his guilty plea proceeding containing the statements of the prosecutor in that case saying that appellant participated in commission of the robbery with Passantino ... in that the statements of the prosecutor contained in the guilty plea transcript were inadmissible hearsay and were improperly used by the state in appellant's trial as substantive evidence of appellant's guilt. ..."

Again, Smith seeks review of this point under the plain error doctrine. Rule 30.20. Again, it is not necessary to explore the limitations of that doctrine. Even if there had been a timely objection to that cross-examination, Smith's third point is meritless.

The cross-examination referred to was for the purpose of impeaching the trial testimony of Passantino that he alone committed the robbery. As a foundation, the prosecuting attorney asked Passantino if he recalled a detailed statement by the

prosecuting attorney of anticipated evidence as a precedent to the acceptance of Passantino's plea of guilty. That detailed statement included the recitation of facts that establish Smith did participate in the robbery. The record shows that the court, in accepting Passantino's plea of guilty, asked Passantino if he thought that evidence was true, and that Passantino said, "Yeah". At Smith's trial, Passantino attempted to explain that he thought the judge "meant the evidence that I put on the thing for myself." This belated and unspoken interpretation does not bar the state from impeaching Passantino by what he actually said.

■ To support this point, Smith cites *People v. Svizzero*, 84 Ill.App.2d 251, 228 N.E.2d 604 (1967). It is not necessary to consider the rationale of that case. *Svizzero* is distinguishable because in that case the witness to be impeached, in entering his plea of guilty, stood silent and did not personally acknowledge the recited evidence of joint participation to be true. Impeachment of Passantino by his prior inconsistent statement is permissible. *State v. Davis*, 566 S.W.2d 437 (Mo. banc 1978); *State v. Tygart*, 673 S.W.2d 83 (Mo.App. 1984). Also see Annot., *Impeachment—Witness' Prior Silence*, 20 A.L.R.4th 245 (1983), supra. Defendant's third point has no merit.

■ By his fourth and final point, Smith contends the motion court erred in not finding trial counsel rendered ineffective assistance by failing to object to the cross-examination, closing argument and impeachment referred to in his second and third points. Those points have no merit. "Counsel cannot be deemed ineffective for failing to make nonmeritorious objections." *Walls v. State*, 779 S.W.2d 560, 562 (Mo. banc 1989), cert. denied, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). Smith's fourth point is denied. The judgment is affirmed.

SHRUM, P.J., and MONTGOMERY, J., concur.