STATE of Missouri, Plaintiff–
Respondent,

v.

Darrill GRAY, Defendant–Appellant.

Darrill GRAY, Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

Nos. 58987, 61933.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 2, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 17, 1993.

Application to Transfer Denied
April 20, 1993.

John Klosterman, Jeff Skoglund, David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., John M. Saleeby, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Darrill Gray appeals his conviction, after a two-day jury trial, of one count of illegal distribution of a controlled substance, cocaine, § 195.020, RSMo.1986 (repealed 1989). Additionally, Gray appeals the denial of his Rule 29.15 motion for post-conviction relief, without an evidentiary hearing. We have consolidated Gray's two appeals, pursuant to Rule 29.15(*l*). We affirm.

The evidence, viewed in the light most favorable to the verdict, is as follows. On August 21, 1989, Detective Richie Williams, Detective Gertrude Towns, Detective Ar-netter Keys, Sergeant Ronald Klier, Detective John Hylla, Detective Thomas Murphy and Detective George Whitling were employed by the City of St. Louis Police Department. Specifically, each was assigned to the Street Corner Apprehension Team ("SCAT").

At approximately 5:00 p.m. on the day in question, the officers were targeting a vacant lot, located at 4722 Beacon. Detective Williams, working undercover, drove north on Beacon and curbed his vehicle beside the vacant lot. He observed three individuals, one female and two males. One male was wearing a green shirt and blue jeans. The second male was wearing a black shirt and white pants. The female was wearing a green hospital-type shirt and black shorts. Using a Kel transmitter,[1] Detective Williams gave a general description of these individuals to the surveillance team, which was composed of Detectives Keys and Towns. He, thereafter, exited his vehicle and crossed the sidewalk. When Gray noticed Detective Williams beginning to approach the three, he walked away from the group, toward Detective Williams. Detective Williams greeted Gray and asked him if he could: "get one". Gray responded: "[w]hat?". Detective Williams then informed Gray that he wanted a quarter rock, meaning that he wanted a $25.00 rock of crack cocaine. Gray displayed a small off-white chunk to Detective Williams and told him that he only had a twenty, meaning a $20.00 rock of crack cocaine. At that point, the woman walked over to Detective Williams and Gray. Gray spoke with the woman. Gray then informed Detective Williams that he needed to make $5.00 off the chunk. Gray asked Detective Williams to break off a chunk. Detective Williams advised Gray that it was only a twenty. After exchanging the crack cocaine for $20.00, Gray directed Detective Williams to leave. Detective Williams, therefore, turned, walked back to his vehicle, entered it, and immediately alerted the surveillance team that the deal had taken place. Specifically, Detective Williams informed the team that he had purchased crack cocaine

1. A Kel transmitter is a one-way wiring system an undercover officer wears so that a surveil-lance team can monitor all sounds in the officer's surrounding area.

from Gray, who was wearing a green shirt and blue jeans. From his rear view mirror, Detective Williams watched as Detectives Klier and Hylla approached the vacant lot and Detective Murphy took Gray into custody.

On July 17, 1990, this case proceeded to trial. Gray testified in his own defense. At the close of the evidence, instructions and arguments of counsel, the jury found Gray guilty of one count of illegal distribution of a controlled substance, cocaine, § 195.020, RSMo. 1986 (repealed 1989). On September 7, 1990, the trial court sentenced Gray to serve eleven years in the custody of the Missouri Department of Corrections. On September 10, 1990, Gray filed his first notice of appeal.

On November 13, 1991, Gray filed a Rule 29.15 motion for post-conviction relief. On November 20, 1991, the trial court appointed the public defender's office to represent Gray. On January 7, 1992, the trial court granted Gray's motion to withdraw and reappoint counsel due to abandonment. That same day, the trial court appointed the special public defender's office to represent Gray. After one extension of time, Gray filed an amended Rule 29.15 motion for post-conviction relief on March 6, 1992. On March 27, 1992, the motion court entered Findings of Fact, Conclusions of Law and Decree, denying Gray's motion. On May 4, 1992, Gray filed his second notice of appeal. We have consolidated Gray's two appeals, pursuant to Rule 29.15(*l* ).

█ Gray's first point is that the trial court erred in: (1) denying his motion to quash the venire panel due to the State's discriminatory use of a peremptory strike against venireperson Brooks in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); and (2) denying his motion to reinstate venireperson Brooks. We disagree.

The record reveals that the original venire panel consisted of forty-five people. Twenty-six of these individuals were white, eighteen were black and one individual's race is not noted for the record. After eleven strikes for cause, twenty whites, thirteen blacks and one venireperson,

whose race is unknown, were left on the panel. Of the State's allotted seven peremptory strikes, it used three to strike black individuals. The resulting jury consisted of nine white jurors and three black jurors.

Gray objected to the composition of the jury, contending that the State had exercised its peremptory challenges in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court then heard rebuttal from the prosecutor. He stated:

> [Brooks], who was moved up beside him, was moved up under [defense counsel's] questioning or during her time with the panel. She asked him a few questions and I might note for the record and I'm sure the court reporter will have fun typing hours of voir dire but we talked for two hours. I talked with the panel for two hours and she spent maybe five minutes with [Brooks] at most and I was of the opinion that I just didn't know enough about him before to make—to go it, whereas with the other jurors who were on the panel I had two hours. So that was my reason for striking him.

After hearing the proffered reason for the prosecutor's strike, the trial court denied Gray's *Batson* motion. Gray's counsel never argued that the reason was pretextual.

█ The trial court's determination regarding purposeful discrimination remains a finding of fact and will not be overturned on appeal unless clearly erroneous. *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992). Clearly erroneous means that the reviewing court is left with a definite and firm conviction that a mistake has been made. *State v. Robinson*, 844 S.W.2d 85, 86 (Mo.App.1992).

█ When trial courts are confronted with a timely *Batson* challenge, they are to follow a three step procedure. First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. *State v. Par-*

*ker,* 836 S.W.2d 930, 939 (Mo. banc 1992). Second, the trial court will require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. *Id.* The prosecutor's explanation will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. *Id.* Finally, assuming that the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated. *Id.*

Here, the prosecutor explained that he struck Brooks because he did not have an adequate opportunity to address this venireperson. Since a discriminatory intent is not inherent in this explanation, it will be deemed race-neutral. *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992). Once the prosecutor was able to articulate an acceptable reason for the strike, Gray had the burden of showing the State's proffered reason for the strike was merely pretextual and that the strike was racially motivated. *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992); *State v. Prowell,* 834 S.W.2d 852, 856 (Mo.App.1992). If Gray believed that the State's reason was pretextual or that the State failed to strike similarly situated white jurors, Gray should have made these arguments at trial and not for the first time on appeal. *State v. Prowell,* 834 S.W.2d at 856. Those best qualified to determine the validity of the State's reasons are in the trial court. *Id.* If the trial court and Gray were satisfied with the State's reasons, this court is hardly in a position to disagree. *Id.* Here, we must assume that since Gray's counsel made no challenge to the State's reasons, trial counsel was satisfied the strike had not been made with the intent to discriminate. *State v. Davis,* 835 S.W.2d 525, 527 (Mo. App.1992). Gray's first point is, therefore, denied.

■ Gray's second point is that the trial court erred in overruling his objection to the admission into evidence of a photograph of Gray in handcuffs after his arrest. Gray argues that the photograph was irrelevant because neither his identity nor his appearance at the time of arrest were at issue in this case. Gray bases this argument on the fact that during his direct examination, he testified that he was at the scene of the arrest and that he was arrested wearing a green shirt and blue jeans. Gray additionally argues that the prejudicial impact of the photograph outweighed its probative value. Specifically, Gray contends that the photograph depicting Gray in handcuffs made it appear as if the police were required to physically restrain him in order to place him under arrest.

The photograph of Gray in handcuffs has not been filed in this court. It was Gray's burden as an appellant to supply this court with a sufficient record to review this point, and failing to do so requires that it be denied. Rule 30.04(a); *State v. Reynolds,* 782 S.W.2d 793, 797 (Mo.App.1989). Additionally, Rule 30.05 provides that an exhibit not properly filed "may be considered by the court as immaterial to the issues on appeal." Gray's second point is, therefore, denied.

■ Gray's third point is that the motion court erred in denying, without an evidentiary hearing, his claim that his trial attorney was ineffective in failing to call Sam LePlure and Lola Mae Cooper to testify. Gray contends that: (1) these individuals would have testified that Sergeant Klier, not Detective Murphy, was the officer who had arrested him; and (2) this would have aided his defense.

■ Appellate review of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j). The findings, conclusions and judgment of the motion court are clearly erroneous if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *State v. Thompson,* 835 S.W.2d 394, 400 (Mo.App.1992). A defendant is entitled to an evidentiary hearing only if: (1) his Rule 29.15 motion alleges facts, not conclusions, warranting relief; (2) those facts raise matters unrefuted by the record; and (3) the matters complained

of resulted in prejudice to the defendant. *Id.* No evidentiary hearing is necessary if the files and record of the case conclusively show that defendant is not entitled to relief. Rule 29.15(g).

■ To establish ineffective assistance of counsel, a defendant must demonstrate that: (1) counsel's performance was unreasonable under prevailing professional norms; and (2) the defendant was thereby prejudiced. *State v. Thompson,* 835 S.W.2d at 400. Additionally, a defendant must overcome the presumption afforded defense counsel that, under the circumstances, the challenged action might be sound trial strategy. *Id.*

■ As a general rule, the decision to call a certain witness is a matter of trial strategy and will not support a finding of ineffective assistance of counsel. *Id.* To support a charge of ineffective assistance of counsel for failure to secure testimony of a defense witness, the defendant must show that: (1) the witness could have been located through reasonable investigation; (2) the witness, if called, would have testified; and (3) the testimony would have provided a viable defense. *State v. Qualls,* 810 S.W.2d 649, 654–655 (Mo.App.1991).

Here, even if Sam LePlure and Lola Mae Cooper would have testified that it was Sergeant Klier, not Detective Murphy, who arrested Gray, such testimony would not have provided Gray with a viable defense. Since failure to call a witness whose testimony would not have provided a viable defense, but would only have cast some doubt on the testimony of a state's witness, does not establish ineffective assistance of counsel, Gray's third point is denied. *State v. Hutton,* 825 S.W.2d 883, 890 (Mo.App. 1992).

For these reasons, both the trial court's and the motion court's judgments are affirmed.

GARY M. GAERTNER, P.J., and SMITH, J., concur.