STATE of Missouri, Plaintiff–Respondent,

v.

Robert J. ZIMMERMAN, Defendant–Appellant.

Robert J. ZIMMERMAN, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18403, 19032.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 31, 1994.

Judith K. Offermann, Jackson, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

GARRISON, Presiding Judge.

Following his conviction by a jury, Robert J. Zimmerman (Appellant) was sentenced to twenty years' imprisonment for the offense of robbery in the first degree, § 569.020,[1] and three years for armed criminal action, § 571.015. His direct appeal from that conviction is Case No. 18403. After he was sentenced, he filed a pro se motion seeking to have the conviction and sentence set aside pursuant to Rule 29.15.[2] Appointed counsel later filed an amended 29.15 motion. His appeal from the denial of both of those motions without a hearing is Case No. 19032. These appeals have been duly consolidated.

## FACTS

At approximately 4:30 a.m. on June 5, 1991, Mary Toledo (the clerk) was in the storeroom of the Pronto convenience store in Joplin, Missouri in connection with her duties as a clerk. As she came out of the storeroom in response to a beeper indicating that someone had entered the front door of the store, she was tripped and pushed to the floor. At first she thought her son who was with her in the store had tripped her as a joke. When she turned and started to get up, however, she saw a man about three feet away from her, holding a knife. The man, whom she did not recognize, then pulled a bandanna over his face, and when she screamed he started down an aisle of the store. As he did so, he

---

**1.** All references to statutes are to RSMo 1986, V.A.M.S., unless otherwise noted.

**2.** All references to rules are to Missouri Rules of Court, V.A.M.R.

met a customer who was investigating the scream. The intruder then held a knife on the customer and demanded that the clerk give him the money from the cash register. When she did so, the intruder took the money, as well as the telephone receiver, and left the store.

The clerk identified Appellant as the man who robbed the store in a photographic line-up at the Joplin Police Department three weeks after the robbery, at the preliminary hearing, and also at trial when she was the State's only witness. Appellant did not testify in his own defense but presented his wife and former landlord who testified about his physical appearance at the general time of the robbery.

### CASE NO. 18403

■ In the first point of his direct appeal, Appellant contends that the trial court erred in failing to strike venireperson Neely for cause. The issue arose from a question on voir dire about whether there were any impending major events in her life which might distract her attention from the trial. In response, venireperson Neely disclosed that she worked with cancer patients, that they had a new doctor about to come in, "things are extremely tight," and that "I'd be worrying about the patients." She later said, however, that she could put those things out of her mind that day for the trial. Appellant further points out that Ms. Neely also revealed that her husband had been a police officer twelve years earlier. She said, however, that she believed she could be fair and impartial in spite of that fact.

Appellant challenged Ms. Neely for cause, explaining that the primary basis was "her work situation." In overruling the challenge the trial court noted her statement that she would set aside her work duties for a day and concentrate on the evidence.

The State argues that this assignment of error is precluded by § 494.480.4 which became effective on August 28, 1993, and provides:

The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for

new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant.

In the instant case, Ms. Neely was eventually stricken by Appellant's use of a peremptory strike and did not sit on his jury. Appellant argues that § 494.480.4 should not be applied because it was not in effect when this case was tried. It has been consistently held, however, that § 494.480.4 is procedural in nature and has retroactive application. *State v. Lawson*, 876 S.W.2d 770, 777 (Mo.App.S.D. 1994); *State v. Quinn*, 871 S.W.2d 80, 81–82 (Mo.App.E.D.1994); *State v. Boyd*, 871 S.W.2d 23, 26–27 (Mo.App.E.D.1993); *State v. Wings*, 867 S.W.2d 607, 609 (Mo.App.E.D. 1993); *State v. Simmons*, 865 S.W.2d 893, 894 (Mo.App.E.D.1993). This point is without merit for this reason alone.

■ Even without the application of § 494.480.4, the record does not disclose reversible error concerning venireperson Neely. "In ruling on a challenge for cause, the trial court has wide discretion in evaluating the qualifications of venirepersons and its ruling will not be disturbed in the absence of a clear abuse of discretion." *State v. Murphy*, 739 S.W.2d 565, 569 (Mo.App.E.D.1987). The record in the instant case does not reveal an abuse of discretion which would require reversal. This point is denied.

In his second point, Appellant contends that the trial court erred in overruling his motion to suppress the clerk's pretrial identification of him. He argues that the identification procedures employed were impermissibly suggestive and created a substantial likelihood of irreparable misidentification.

■ A defendant has a due process right to exclude identification testimony which results from procedures that are unduly suggestive and conducive to an irreparable mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967); *State v. Hoopingarner*, 845 S.W.2d 89, 93 (Mo.App.E.D. 1993). In determining the admissibility of identification testimony which is alleged to have resulted from unduly suggestive pre-

trial identification procedures, courts apply a two-prong test: (1) whether the pretrial identification procedure was in fact unduly suggestive; and if so, (2) what impact the suggestive procedures had on the reliability of the witness' identification. *State v. Vinson*, 800 S.W.2d 444, 446 (Mo. banc 1990); *State v. Hoopingarner*, 845 S.W.2d at 93. Reliability, rather than suggestiveness, is the linchpin in determining the admissibility of identification testimony. *State v. Higgins*, 592 S.W.2d 151, 160 (Mo. banc 1979). In challenging the admissibility of identification testimony, the identification must have been suggestive, however, before there is a review for reliability. *State v. Vinson*, 800 S.W.2d at 446.

■ Appellant argues that the clerk's pretrial identification of him was the result of procedures which were unduly suggestive. His argument in this regard is directed at the clerk's two pretrial identifications of him. First, he attacks the clerk's selection of his picture from a photographic lineup three weeks after the robbery. At that time, an officer handed her a book of photographs and, rather than having her review it from the beginning, asked that she begin reviewing it at a point in the book selected by him. After she looked at four or five pages containing six photographs each, she identified Appellant's picture as the person who committed the robbery, saying "this was the guy." The officer then told her that Appellant was in custody, that he had been picked up for pulling a knife on a woman at a Dillon's store, and that he had been convicted for a convenience store robbery in Arizona. Appellant contends that this procedure was so unduly suggestive as to taint the clerk's later in-court identifications of him.

Similar contentions, however, have been unavailing. In *State v. Higgins*, 592 S.W.2d at 159, an identification of the defendant from a set of five pictures with a later statement from the officer that he was the suspect they had in mind was held not to be impermissibly suggestive so as to create a substantial likelihood of an irreparable misidentification at trial. In *State v. Hornbuckle*, 769 S.W.2d 89, 91–92 (Mo. banc 1989), the victim of a robbery selected the defendant's picture

from a photographic lineup consisting of thirty pictures after being told that the officers believed they had a suspect in the case. The court held that the identification was not impermissibly suggestive as a matter of law. *Id.* at 94. In *State v. Garrett*, 825 S.W.2d 954, 958 (Mo.App.E.D.1992), the court denied a similar claim where the victim of a robbery selected the defendant's picture from a group of six after being told that the police wanted to see if she could identify a suspect they had arrested. A photographic lineup of six pictures with the request to the witnesses to "see if they could identify the robbers" was insufficient to exclude the identification in *State v. Morant*, 758 S.W.2d 110, 117 (Mo. App.E.D.1988).

■ Appellant also contends that the clerk's identification of him at the preliminary hearing was the result of suggestive procedures. He points not only to the effect of the photographic lineup but also to the procedures which occurred at the preliminary where the clerk was asked if she saw the offender in the courtroom. There were apparently a number of people present and Appellant was seated on the back row. The clerk was permitted to walk around the room because she couldn't see everyone. After doing so, she said, "it's the guy in the back," and the judge said, "are you saying that it's the gentleman in the white shirt," to which she answered in the affirmative. Certainly the identification procedure at the preliminary was not unduly suggestive because of the judge's single statement which was obviously made to provide a clear record.

Because the pretrial identification procedures in the instant case were not unduly suggestive so as to require exclusion of the identification testimony, any contention that the reliability of the identification was affected goes to the weight of the testimony and not to the admissibility. *State v. Morant*, 758 S.W.2d at 118. This point is, therefore, denied.

■ In his third point of error, Appellant alleges that the trial court abused its discretion in sustaining the State's objection to the admission of his Exhibit K. That exhibit was a photocopy of an affidavit apparently made

by a representative of American States Insurance Company stating that a settlement had been made with Appellant on May 30, 1991, in the amount of $3069 for damage to his truck. Appellant contends that the affidavit was relevant to show his lack of a pecuniary motive to commit robbery five days later.

This issue arose during the testimony of Appellant's wife who testified that as of the date of the robbery, they had money from an insurance claim on their truck in excess of $3000 which they received on May 30 or 31. After being asked on cross-examination about whether she brought any documentation with her about the insurance settlement, on redirect she identified Exhibit K as "the Affidavit that was signed on the insurance claim" in the amount of $3069 on May 30, 1991. She further testified that her testimony about the insurance settlement was based on that affidavit. When the affidavit itself was offered in evidence, the court sustained the State's objections, which were, among other things, that it was a photocopy and there had been no foundation laid for its authenticity.

 Whether a sufficient foundation has been laid for the admission of evidence is within the sound discretion of the trial court. *State v. Blakeburn*, 859 S.W.2d 170, 177 (Mo. App.W.D.1993). The trial court is given wide latitude in ruling on whether to admit or exclude evidence, and absent a clear abuse of discretion, the appellate court will not interfere with that ruling. *Id.*

 The proponent of secondary evidence must prove three things: (1) the original is unavailable, (2) the unavailability is not the proponent's fault, and (3) the secondary evidence is trustworthy. *State v. Davis*, 825 S.W.2d 948, 951 (Mo.App.E.D.1992). In the instant case, Appellant made no attempt to satisfy any of those tests. Appellant also failed to make an offer of proof including a statement of specific and sufficient facts to establish the admissibility of the document. Failure to do so results in the matter not being preserved for appellate review. *State v. Blakeburn*, 859 S.W.2d at 177. This point could be denied on this basis alone.

Additionally, we are unable to find that the trial court abused its discretion in excluding evidence which would have been cumulative of the testimony of Appellant's wife. Finally, we also note that in the absence of a stipulation of the parties, an affidavit is not to be treated as evidence. *Eames v. Eames*, 463 S.W.2d 576, 579 (Mo.App.W.D.1971). *See also State ex rel. O'Connell v. Crandall*, 562 S.W.2d 746, 750 n. 5 (Mo.App.E.D.1978). This point is, therefore, denied.

 Appellant's fourth point is directed at the trial court's overruling of his motion for judgment of acquittal at the close of the State's case and at the close of all the evidence on the basis that there was insufficient evidence to support a guilty verdict. In considering the sufficiency of the evidence, an appellate court considers all evidence, and the reasonable inferences drawn therefrom, in the light most favorable to the verdict and rejects all evidence to the contrary. *State v. Bernard*, 849 S.W.2d 10, 21 (Mo. banc 1993); *State v. Cody*, 800 S.W.2d 750, 752 (Mo.App. E.D.1990). Conflicts in the evidence, determination of the credibility of witnesses and the weight to be given their testimony are within the peculiar province of the jury. *State v. Newberry*, 605 S.W.2d 117, 121 (Mo. 1980); *State v. Hitchcock*, 676 S.W.2d 538, 540 (Mo.App.S.D.1984). It is not the appellate court's function to substitute its judgment for that of the jury. *Id.* Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989).

In the instant case, Appellant correctly points out that the identification testimony of the clerk was the State's only evidence linking him with this crime. He emphasizes the fact that the clerk was startled when she was tripped and pushed to the floor from behind and saw the perpetrator's face only briefly before he covered the lower half with a bandanna. He also points out that he had tattoos on his face, arms and hands which were not noticed by the clerk, and there was testimony that he was clean shaven as of the time of the incident, while the clerk testified that

he had a mustache and a goatee. Finally, Appellant argues that the identification testimony was the product of an unduly suggestive pretrial identification, a contention which we have ruled adversely in the preceding point.

■ Even though there may have been inconsistencies between the clerk's testimony and other evidence presented by Appellant, those were for the jury. The clerk testified that she observed the face of the robber from a distance of three feet in a well-lit area. She testified without hesitation that Appellant was that person. The testimony of a single witness may be sufficient to sustain a conviction, *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990), even though the testimony may contain some inconsistencies. *State v. Newberry*, 605 S.W.2d at 121; *State v. Hitchcock*, 676 S.W.2d at 540. Under the totality of the circumstances, the clerk's testimony constituted substantial evidence from which the jury could have found Appellant guilty beyond a reasonable doubt. This point is, therefore, denied.

■ In the final point of his direct appeal, Appellant challenges that part of the jury instruction patterned after MAI–CR 3d 302.04 defining "proof beyond a reasonable doubt." The objection now presented, however, was not raised in the trial court and is presented for plain error review.

Appellant contends that the instruction violated his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Missouri Constitution in that it lowered the standard of proof required by due process. The courts of this state have repeatedly and consistently upheld the constitutionality of MAI–CR 3d 302.04 and have denied challenges identical to that of Appellant's. *State v. Harris*, 870 S.W.2d 798, 811 (Mo. banc 1994); *State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993); *State v. Ervin*, 835 S.W.2d 905, 924 (Mo. banc 1992), *cert denied*, —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988); *State v.*

*Henson*, 876 S.W.2d 31, 33 (Mo.App.S.D. 1994). This point is, likewise, denied.

### CASE NO. 19032

■ Appellant raises two points of error relating to the denial of his Rule 29.15 motion, both of which are premised on a theory of ineffective assistance of counsel. To prevail on this theory, a movant must meet a two-prong test: (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances; and (2) that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Both the performance and prejudice prongs of the test must be satisfied in order to prevail on a claim of ineffective assistance of counsel. *Id.*

■ In examining the reasonableness of a defense attorney's actions, an appellate court must eliminate the distorting effects of hindsight and, therefore, there is a strong presumption that the attorney's conduct was proper as being within the wide range of reasonable professional assistance. *Id.* at 858. The movant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.*

■ In order to satisfy the prejudice prong of the test, it is not enough for a movant to show that an error by counsel might have had some conceivable effect on the outcome of the case, but rather, it must be shown that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.;* *Moore v. State*, 827 S.W.2d 213, 215 (Mo. banc 1992).

■ Appellate review of the denial of postconviction relief is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *State v. Ervin*, 835

S.W.2d at 928. The findings and conclusions of the motion court are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Id., State v. White,* 798 S.W.2d 694, 697 (Mo. banc 1990). Appellant, as the moving party, has the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.15(h).

In his first point relied on in Case No. 19032, Appellant contends that the motion court erred in failing to grant relief under his Rule 29.15 motions "in that trial counsel failed to present available evidence which showed Appellant lacked a motive to commit robbery and trial counsel failed to offer evidence which would have cast substantial doubt on the victim's identification of Appellant; had this evidence been presented, there is a reasonable probability that the result of the trial would have been different, and Appellant would have been acquitted." The two arguments under this point will be considered separately.

## FAILURE TO PRESENT AVAILABLE EVIDENCE SHOWING A LACK OF MOTIVE TO COMMIT ROBBERY

 Appellant contends that his trial counsel failed to admit two exhibits which would have gone to his lack of motive to commit robbery. The first was the affidavit by the insurance company representative (Exhibit K) described in our discussion of Point III of Appellant's direct appeal. The other was a check stub from the insurance company which Appellant contends that he furnished to trial counsel and which he says could have been used to verify the payment, but which was never offered into evidence. As a result, Appellant complains that the only evidence concerning the receipt of the insurance settlement was through his wife's testimony. He argues that the significance of the evidence was indicated by the fact that, after the prosecutor argued that no receipt or stub proving payment of the settlement had been produced, the jury, during deliberations, requested the exhibits, and in a later note to the court inquired: "Was there any specific evidence verifying the receipt of the insurance money." Appellant points to this inquiry as evidence that he was prejudiced by counsel's failure to introduce the documentary evidence which could then have been presented to the jury during its deliberations.

 In Appellant's amended motion filed by appointed counsel, he alleged that "Counsel failed to submit evidence in the form of an affidavit signed and notarized by the representative of American States Insurance Company showing payment of $3,069 on May 30, 1991 to movant to settle his accident claim." Because trial counsel did offer a copy of the affidavit in evidence which was rejected, this complaint apparently refers to the fact that Exhibit K was a photocopy rather than the original affidavit. Notwithstanding that fact, as indicated earlier in this opinion, in the absence of a stipulation of the parties, an affidavit is not to be treated as evidence. Counsel will not be held ineffective for failing to present inadmissible evidence. *State v. Twenter,* 818 S.W.2d 628, 638 (Mo. banc 1991). In addition, it must be remembered that Appellant's wife had already testified not only about the receipt of an insurance settlement but also that Exhibit K was an affidavit on the insurance claim which showed receipt of $3069 on May 30, 1991. The jury was never instructed to disregard that testimony with the result that the contents of the affidavit were, in effect, before the jury. Failure to present cumulative evidence is not ineffective assistance of counsel. *Id.* at 636. *See also State v. Werner,* 810 S.W.2d 621, 626 (Mo.App.S.D.1991).

The check stub which Appellant says should have been offered in evidence is described by him as a "check stub, No. 89681401, from American States Insurance Company, paying $2,600.00 to movant to settle his accident claim." We are directed to nothing in the record explaining the discrepancy in the amounts apparently contained in the affidavit and the check stub. Introduction of the latter could have created an inconsistency with the testimony of Appellant's wife in which she described the contents of Exhibit K (the affidavit). The check stub also would have been at least partially cumulative of the testimony of Appellant's wife.

We are unable to say that failure to present such evidence constituted ineffective assistance of counsel or that it was prejudicial to Appellant's cause. *See State v. Evans*, 802 S.W.2d 507, 515–16 (Mo. banc 1991); *State v. Werner*, 810 S.W.2d at 626.

Appellant also argues that counsel was ineffective by failing to present the testimony of his former employer who "could have verified appellant's employment and the fact that he was paid approximately $300 per week" on the theory that this "would have bolstered appellant's argument that he was not in need of money, and hence had no motive to commit robbery." Selection of witnesses is generally a question of trial strategy. *See State v. Harris*, 854 S.W.2d 853, 857 (Mo.App.E.D.1993); *State v. Gray*, 849 S.W.2d 115, 119 (Mo.App.E.D.1993). As indicated in the *Gray* case, to support a charge of ineffective assistance of counsel for failure to call a defense witness, Appellant must show that the witness could have been located, if called would have testified, and also that the testimony would have provided a viable defense. *Id.* Ineffectiveness of counsel is not established by failure to call a witness whose testimony would not have provided a viable defense but would only have cast some doubt on the testimony of a State's witness. *Id.* In addition, there is no allegation by Appellant that he informed trial counsel of his former employer's existence and the information that person allegedly possessed. In the absence of such allegations, a motion does not demonstrate prejudice by failure of counsel to secure the presence and present the testimony of the witness. *State v. Pendas*, 855 S.W.2d 512, 516 (Mo.App. W.D.1993); *State v. Dudley*, 819 S.W.2d 51, 56 (Mo.App.S.D.1991).

*FAILURE TO PRESENT EVIDENCE WHICH WOULD HAVE CAST DOUBT ON THE VICTIM'S IDENTIFICATION OF APPELLANT*

Appellant contends that he was denied effective assistance of trial counsel because his attorney failed to offer evidence to cast substantial doubt on the store clerk's identification of him. In support, he first argues that trial counsel failed to introduce a certified copy of a document entitled "Summary Admission Report" prepared when he was received into the Arizona Department of Corrections in April 1989. He argues that it listed 13 separate tattoos on his body, including "teardrop" tattoos at the outer corner of his right eye and tattoos on the back of his right hand, top of his right wrist, and back of his left hand.

At trial, the store clerk was cross-examined extensively by Appellant's trial counsel who established that she did not notice tattoos on the person who robbed her. While Appellant's wife was testifying at trial, his trial counsel asked Appellant to stand in front of the jury, whereupon his wife proceeded to point out and describe the tattoos which were visible. She also testified that a number of the tattoos had existed at the time of the robbery in question. In addition, Appellant's landlord at the time of the robbery testified about the existence and description of his tattoos as of that time. Apparently Appellant claims that the record from the Arizona Department of Corrections would have provided further proof that there were tattoos on Appellant which should have been noticed by the clerk if he, in fact, was the perpetrator. This evidence, however, was cumulative of the testimony by Appellant's wife and former landlord, and the failure to present it does not establish that Appellant is entitled to relief. *See State v. Bollmann*, 813 S.W.2d 22, 25 (Mo.App.E.D.1991), where relief was denied under circumstances similar to the instant case. Additionally, a decision not to introduce evidence which would show Appellant's prior confinement in the Arizona Department of Corrections comes within the scope of sound trial strategy and does not establish that trial counsel was impermissibly ineffective. *See State v. King*, 849 S.W.2d 706, 709 (Mo.App.E.D.1993).

Appellant also complains that his trial counsel did not present the testimony of Sherry Barnett, who allegedly could have testified that at the time of the robbery in question Appellant was clean shaven. He contends that this would have conflicted with the clerk's testimony that the person who robbed her had a mustache and goatee. There is no allegation in either of Appellant's

Rule 29.15 motions that he informed trial counsel of the name or existence of Sherry Barnett or of any potential testimony she might be able to give. Under these circumstances, as with Appellant's former employer, trial counsel cannot be convicted of ineffective assistance of counsel.

 Appellant also complains that his trial counsel was in possession of but failed to introduce gasoline receipts which would have demonstrated that he "was a regular customer at the Pronto store during the time period of the robbery." He argues that they could have been used to impeach the clerk's testimony that the person who robbed her was a complete stranger whom she had not seen before. There is no allegation, however, that the store clerk who was robbed was on duty during any of the prior occasions when Appellant claims to have been present in the store. Appellant's wife did testify that they had frequently purchased gas at the Pronto store in question but likewise she did not say the clerk in question was there on any such occasion. There is no showing that the gas receipts would not have been merely cumulative of that evidence already before the jury by way of Appellant's wife's testimony. The selection of evidence to introduce is largely a matter of trial strategy which is not a foundation for finding ineffective assistance of counsel. *State v. Dunmore,* 822 S.W.2d 509, 512 (Mo.App.W.D.1991). Especially is this true with reference to evidence which would be cumulative. *See State v. Ramsey,* 864 S.W.2d 320, 340 (Mo. banc 1993).

 Finally, Appellant contends that his trial counsel should have produced the other customer in the store at the time of the robbery to further demonstrate the unreliability of the clerk's identification testimony. He contends that the customer "could not have identified appellant as the perpetrator of the crime as he had previously picked another individual in the photo lineup." This statement is unsupported in the record. Additionally, the evidence indicated that by the time the robber confronted the customer in the store, he had placed a bandanna over the majority of his face. Appellant admitted to the trial court at the time of the sentencing that he and his trial counsel had discussed

calling the store customer as a witness but that trial counsel was concerned that the witness would identify Appellant. This was clearly a matter of trial strategy which will not form the basis for ineffective assistance of counsel. For instance, it has been held that failure to call a witness who was unable to pick a defendant out of a police lineup but who might have provided other damaging testimony is not ineffective assistance of counsel. *See State v. Ramsey,* 864 S.W.2d at 339.

 In his last point concerning the denial of his Rule 29.15 motion, Appellant contends that he was denied the effective assistance of counsel because his trial counsel failed to adequately investigate the case. He argues that as a frequent customer of the Pronto store, he was aware that prior to the robbery there was a working video surveillance camera in the store. He further alleges that on July 17, 1991, he requested trial counsel to find out if there was a working video camera in the store at the time of the robbery but that counsel did nothing about it until June 5, 1992, when his investigator contacted the district manager of the Pronto stores and was told that there were neither audio nor video surveillance devices in the store until nearly one year after the robbery. He complains that trial counsel did not contact "upper management" of Pronto to verify the district manager's statements.

One requirement of a claim that trial counsel failed to adequately investigate a case is that the movant must identify what further investigation would have revealed and how it would have benefitted him. *State v. Morgan,* 830 S.W.2d 41, 45 (Mo.App.S.D.1992). Appellant does not do so in the instant case, but only alleges that there should have been additional investigation to "verify" what the district manager had told his attorney's investigator. Additionally, Appellant does not specify how "upper management" would have differed from the "district manager."

Under the circumstances present in the instant case and for the reasons discussed above, we are unable to find that the motion court's denial of Appellant's Rule 29.15 motion was clearly erroneous.

The judgment of the trial court and the order of the motion court are affirmed.

PREWITT and CROW, JJ. concur.