Elizabeth TOBIAS, et al.,
Plaintiffs/Appellants,

v.

Joseph KORMAN, et al.,
Defendants/Respondents.

No. ED 83010.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 24, 2004.

Stephen Nangle, St. Louis, MO, for appellant.

Howard Shalowitz, St. Louis, MO, for respondent.

WILLIAM H. CRANDALL, JR., Judge.

Plaintiffs, Elizabeth Tobias, et al., beneficiaries of the Amended Trust of Henry H. Tobias (hereinafter "the trust"), appeal from the judgment of the trial court, entered in a court-tried case, in their action against defendants, Joseph Korman, trustee of the trust, and Deborah Korman, his wife. Plaintiffs also appeal from the trial court's judgment on Korman's[1] counterclaims. The court granted a directed verdict in favor of Korman on plaintiffs' claim for an accounting. The court found in favor of Korman on claims pertaining to reformation of the trust, discharge of Korman as fiduciary, damages for amounts taken by him in excess of that allowed by the trust, damages for constructive fraud, and damages for breach of fiduciary duty. The court also found that it did not have jurisdiction to entertain plaintiffs' claim to determine heirship. On Korman's counterclaims, the court enforced the *in terrorem* clause in the trust as to some plaintiffs and ordered some plaintiffs to return advance distributions under the trust. We affirm.

Henry H. Tobias and his wife had numerous nieces and nephews, but no children. After his wife's death in 1988, Henry determined to establish a trust. Some family members encouraged him to get his affairs in order. When various family members declined to serve as trustee, Henry offered the position to Korman, who had prepared Henry's taxes since 1972. Korman accepted the position. In January 1991, Henry executed an initial trust and a will which poured over into this trust.

In August 1996, Henry amended the original trust and that amended trust is the trust at issue. Although Korman prepared the trust at Henry's direction and arranged for Henry to sign the documents before the necessary parties, he neither suggested the terms of the trust nor urged Henry to sign it. Henry was named as the income beneficiary of the trust. The trust directed that at his death specific amounts were to be distributed to certain beneficiaries, including plaintiffs; and that the remaining trust assets were to go to Korman. Some plaintiffs received less money under the amended trust than they had received under the first trust. The trust included an *in terrorem* clause, which provided that any beneficiary who challenged the validity of the trust in court would automatically forfeit his or her share.

From 1991 to the time of Henry's death in November 1998, Korman deposited Henry's monthly social security, military disability, and retirement checks into the trust. Throughout this time, Korman became increasingly involved not only in overseeing Henry's financial affairs, but also in providing for Henry's personal care and keeping up Henry's home. He did the grocery shopping and drove Henry where he needed to go. He arranged for in-home

---

1. For ease of understanding, we refer to defendants in the singular form as "Korman," because Joseph Korman was the named trustee and the cause of action involved his actions both as an individual and as trustee. Deborah Korman was a party to the action solely because of her status as spouse of Joseph Korman.

nursing care as Henry's health deteriorated. With Henry's approval, Korman borrowed $385,000.00 from the trust. Under the terms of the trust, loans to Korman were interest-free.

During that same time period, plaintiffs maintained limited and sporadic contact with Henry. The most any plaintiff visited was about three times per year and then only for a few hours at a time. Henry occasionally sent cards and small monetary gifts to some plaintiffs on their birthdays and at Christmas. Plaintiff, Paul Tobias, borrowed $3,265.00 from the trust and that amount was not repaid at the time of Henry's death.

After Henry's death in 1998, plaintiffs, Richard Tobias, Elizabeth Tobias, Paul Tobias, and Laura Pickett, received personal property which they agreed constituted advances on their distributions under the trust. The advances were valued at $7,010.00, $2,805.00, $850.00, and $3,575.00, respectively. Some of the plaintiffs sought an accounting of the trust assets from Korman, but he refused because Henry did not want one beneficiary to know the amount another beneficiary received under the trust. Korman did, however, provide information regarding a plaintiff's individual share under the trust if that plaintiff requested it.

Plaintiffs brought the present action. Plaintiffs consisted of some of Henry's nieces and nephews; namely, Elizabeth Tobias, Paul Tobias, Richard Tobias, Laura Pickett, Karen Wachter, Patricia Bostron, Madonna Morley, Helen McCormick, Margaret Cox, Ronald Volk, James Hussey, Margie Hussey, and James Hussey, Jr. The named defendants were Korman, his wife Deborah, Presentation Church, Joan Garrison, Constance Windshiegl, and

Mary Boulware.[2] Plaintiffs' petition was in six counts and sought an accounting (Count I), a reformation of the trust on the basis that Korman exercised undue influence over Henry (Count II), a discharge of Korman as fiduciary and damages for amounts taken by him in excess of that allowed by the trust (Count III), damages for constructive fraud (Count IV), damages for breach of fiduciary duty (Count V), and determination of heirship (Count VI). Korman counterclaimed, seeking not only a declaratory judgment that the *in terrorem* clause in the trust should be enforced against plaintiffs (Count I) but also a recoupment of any advances from the trust received by plaintiffs (Count II).

The case was tried to the court. Under Count I for an accounting, the trial court entered a directed verdict in favor of Korman. Under Count II for reformation, the court found there was no undue influence of Henry by Korman. Under Count III for discharge and return of certain funds, the court found that Korman did not engage in a breach of trust, although Korman did owe the trust $385,000.00 in unpaid loans. The court, however, found that because Korman was receiving the residual amount under the trust, his repayment of the loans would be a "sham." Under Counts IV and V for damages for constructive fraud and for breach of fiduciary duty under a durable power of attorney, the court found in favor of Korman. Under Count VI for determination of heirship, the court found that it did not have jurisdiction to proceed on that claim. Regarding Count I of Korman's counterclaim, the court determined that the *in terrorem* clause should be enforced against some plaintiffs (Elizabeth Tobias, Laura Pickett,

---

2. Defendants, Presentation Church, Garrison, Windschiegl, and Boulware, were never served and the trial court dismissed plaintiffs' claims against those defendants without prejudice. They are not parties to this appeal.

Margaret Cox, Ronald Volk, James Hussey, Madonna Morley, Richard Tobias, and Paul Tobias) because the evidence established that they were aware of the existence and the significance of the *in terrorem* clause prior to trial. The trial court, however, did not enforce the *in terrorem* clause against other plaintiffs (Karen Wachter, Patricia Bostron, Helen McCormick, Margie Hussey, and James Hussey, Jr.) because there was no evidence that they were cognizant of the risk associated with challenging the trust in light of the *in terrorem* clause. As to Count II of Korman's counterclaim, the court found that Richard Tobias, Elizabeth Tobias, Paul Tobias, and Laura Pickett, the plaintiffs who took advancements under the trust, must return the money or the value of the property to the trust. The court also ordered that Paul Tobias pay Korman, as trustee of the trust, the $3,265.00 borrowed from the trust, plus accrued interest of $2,024.30. The court lifted a freeze on the trust assets and released the assets to Korman. The court also permitted the attorney's fees to be paid out of the trust. Plaintiffs appeal from that judgment.

■ Our review is guided by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the decision of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. The appellate court accepts as true the evidence and inferences favorable to the judgment and disregards contrary evidence, mindful that the credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimony. *Morris v. National Refractories & Minerals*, 21 S.W.3d 866, 868 (Mo.App. E.D.2000).

■ In their first point, plaintiffs contend that the trial court erred in refusing to admit four exhibits offered into evidence. Plaintiffs describe the exhibits as follows: Henry's tax returns for 1990 through 1998 (Exhibit EE); Korman's "pro se Response with his records arising out of [his] deposition" (Exhibit GG); Henry's bank statements pertaining to the trust (Exhibit XX); and Henry's 1099 forms for 1990 through 1998 (Exhibit S). These exhibits consisted of photocopies.

■ The terms of a document must generally be proven by production of the original of that document. *Redpath v. Highway and Transp. Com'n*, 783 S.W.2d 429, 431 (Mo.App.W.D.1989). A copy reproduced by a photographic duplicating process is not admissible under the best evidence rule. *City of Peculiar v. Dorflinger*, 723 S.W.2d 424, 427 (Mo.App. W.D.1986). Secondary evidence may, however, be admitted if the offering party demonstrates that the primary evidence is lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary, or is otherwise unavailable or inaccessible. *Schnucks Twenty–Five, Inc. v. Bettendorf*, 595 S.W.2d 279, 283 (Mo. App. E.D.1979). The trial court is vested with wide discretion in determining the sufficiency of a foundation for the introduction of secondary evidence. *Walsh v. St. Louis Nat. Baseball Club, Inc.*, 822 S.W.2d 559, 565 (Mo.App. E.D.1992).

In the instant action, there was no explanation about the whereabouts of the originals and why they were unavailable for trial. There was no evidence that the originals were lost, stolen, destroyed, or otherwise inaccessible. There was no testimony that the proffered exhibits were true and accurate copies of the originals. Given these facts, it was within the discretion of the trial court to find that there was not a sufficient showing to justify the

admission of the photocopies. Plaintiffs' first point is denied.

■ In their second point, plaintiffs assert that the trial court erred in ruling that they neither pled nor proved a *prima facie* case for an accounting.

■ Four elements are required to establish equitable jurisdiction for an accounting: the need for discovery, the complicated nature of the accounts, the existence of a fiduciary or trust relationship, and the inadequacy of legal remedies. *Shaner v. System Integrators, Inc.*, 63 S.W.3d 674, 677 (Mo.App. E.D.2001). Of these, the existence of a fiduciary relationship is the most critical element to support the exercise of equitable jurisdiction. *Id.* As the court explained in *American Button Co. v. Weishaar*, 170 S.W.2d 147, 152 (Mo.App.1943):

> The decisions are agreed that a demand for an accounting will not lie as the sole ground for invoking the jurisdiction of equity, and that before the plaintiff may be accorded an accounting, there must exist some distinct and special ground of equitable jurisdiction to which the demand for an accounting will be fairly incidental or ancillary. Neither the need for discovery nor the complicated character of the accounts will alone establish the inadequacy of the legal remedy, but instead there must be shown a fiduciary or trust relationship between the plaintiff and the defendant which will serve as a foundation for seeking equitable relief. (Citations omitted).

In their amended petition, plaintiffs made the following relevant allegations: they were beneficiaries under the trust; Korman was trustee; since Henry's death in November 1998, they had not received their total "pecuniary bequest" under the trust; Korman was required under section 456.740.2 RSMo 2000 to provide them with a yearly accounting; and they have never received an accounting from Korman. These allegations did not plead facts necessary to warrant an accounting. They did not plead that there was a need for discovery, that the nature of the accounts were complicated, that a fiduciary or trust relationship existed between them and Korman, or that their remedies at law were inadequate.

In addition, plaintiffs failed to prove the essential elements for an accounting. Plaintiffs presented no evidence that the trust accounts were complicated in nature. They did not prove that the legal remedies available to them were inadequate. Rather, the trial court stated that it considered a standard motion to compel an adequate remedy at law. Further, contrary to plaintiffs' assertion, Korman was under no statutory duty to provide a yearly accounting to plaintiffs. The duty to provide an accounting under section 456.740.2 pertained only to income beneficiaries, which plaintiffs were not.

With regard to plaintiffs' assertion that Korman had a duty to account to them as beneficiaries, there is caselaw that a beneficiary who has a future interest under a trust, whether that interest is vested or contingent, is entitled to an accounting on the basis of a fiduciary relationship. *Engelsmann v. Holekamp*, 402 S.W.2d 382, 388–389 (Mo.1966). Yet, *Engelsmann* is distinguishable on its facts from the case before us. In *Engelsmann*, the trust established by the decedent directed the trustees to pay the net annual income to his widow for her life and upon her death to his daughters until they attained the age of 35 years, at which time the corpus of the trust was to be distributed to the daughters. *Id.* at 385. After their mother's death, the daughters brought an action against the personal representative of the deceased trustee for an accounting of

the administration of the trust. *Id.* The court found that the *Engelsmann* daughters, as remainder beneficiaries of the trust, were entitled to demand an accounting of the administration of the trust. *Id.* at 388. Because the daughters were the beneficiaries of the trust assets remaining at the time of their mother's death, an accounting of how the trustee managed the trust during mother's life was appropriate.

In contrast, plaintiffs in the present action were recipients of designated amounts under the trust; they were not the beneficiaries of the residual funds remaining in the trust after Henry's death. Korman was the only beneficiary who was entitled to the remainder of the trust assets. As long as each plaintiff received his or her specific amount, an accounting by Korman would be unnecessary. Under these circumstances, Korman did not need to demonstrate his faithfulness in handling the trust assets by providing an accounting to the remainderman. Korman furnished information to each plaintiff about that plaintiff's share if he or she requested it. Plaintiffs did not sufficiently prove that they were entitled to an accounting. Their second point is denied.

In their third point, plaintiffs claim that the trial court erred in refusing to reform the trust because they established Korman's undue influence over Henry in securing the execution of the trust documents.

Undue influence is that influence which by force, coercion, or overpersuasion destroys the free agency of the benefactor. *Smith v. Crites,* 781 S.W.2d 189, 191 (Mo.App.1989). A presumption of undue influence arises when the evidence demonstrates that the benefactor and beneficiary were in a relationship of confidence and trust; and when the evidence further discloses facts from which the exercise of undue influence may be inferred, apart from facts which show a confidential relationship. *Id.* In looking for a fiduciary relationship, equity does not limit the circumstances under which it may be found, but will look for those instances where a special confidence is reposed on one side with a resulting influence on the other. *Robertson v. Robertson,* 15 S.W.3d 407, 412 (Mo.App. S.D.2000). The question is always whether or not trust is reposed with respect to the property or business affairs of the other. *Id.* The burden is on the plaintiff to prove undue influence. *Ruestman v. Ruestman,* 111 S.W.3d 464, 478 (Mo.App. S.D.2003).

In the instant case, the evidence was that Henry had reposed a special confidence and trust in Korman. For approximately ten years, Korman served as trustee for Henry's trust. Over those years, Korman became progressively more involved in Henry's business and personal affairs. Korman was named as a beneficiary of the trust. Korman was present when Henry executed the trust documents. The trial court stated that plaintiffs established "a presumption of undue influence" on the part of Korman.

A confidential relationship alone, however, is not enough to raise a presumption of undue influence. *Robertson,* 15 S.W.3d at 413. There must be facts and circumstances tending to show that undue influence was an active factor in the transaction. *Id.* It is not undue influence for the beneficiary to exercise influence as long as it was not so coercive or importunate as to deprive the benefactor of his or her free agency. *Id.*

Here, the trial court found that Korman rebutted the presumption of undue influence. Setting up the trust was Henry's, not Korman's, idea. Prior to establishing the original trust, several family members suggested to him that he get his affairs in

order. Korman only agreed to serve as trustee when Henry's family members refused. Further, Henry did not lack the necessary mental capacity either to determine the distributions under the trust or to execute the trust documents. Korman did not cause Henry to amend his trust or to execute the trust documents. Henry executed the trust documents voluntarily. The reduction in some plaintiffs' shares as a result of the trust was reasonable in that Korman cared for Henry and was in constant contact with him. The court noted that Korman had primary contact with Henry, while plaintiffs' relationships with Henry were "practically nonexistent." In addition, the court stated, "[Henry] Tobias' decision to reward his supportive friend Korman was a logical one." Plaintiffs' arguments supporting undue influence are premised not on Korman's actual exercise of undue influence, but merely on the existence of the opportunity for Korman to have exercised undue influence. The trial court did not err in finding that Korman did not exercise undue influence over Henry in securing the execution of the trust. Plaintiffs' third point is denied.

■ In their fourth point, plaintiffs assert that the trial court erred in failing to impose a constructive trust on the assets in Korman's possession. They argue that a constructive trust was warranted on two grounds: first, Korman exercised undue influence over Henry; and second, they did not have to prove actual fraud because Korman breached a confidential relationship because he improperly managed the trust assets and refused to provide an accounting. In light of our holding under the previous points that there was not sufficient evidence of undue influence and that Korman did not have to provide an accounting, we need not address those prongs of plaintiffs' argument. We address only their claim of constructive fraud as it related to Korman's improper handling of the trust assets.

■ The object of a constructive trust is to restore to the rightful owner property wrongfully withheld. *Williams v. Walls,* 964 S.W.2d 839, 845 (Mo.App. S.D.1998). 658. Either actual or constructive fraud is sufficient to support the imposition of a constructive trust. *Id.* Courts have equated constructive fraud with the breach or violation of a fiduciary, or confidential, relationship. *Id.* at 846. A confidential relationship exists when one person relies upon and trusts another with the management of his property and attendance to his business affairs, thereby creating some degree of fiduciary obligation. *Id.* If a fiduciary or confidential relationship exists, no proof of actual fraud is necessary in order to establish a constructive trust. *Id.* This exception is based upon the principle that a breach of a confidential relationship is, in itself, constructive fraud. *Id.* Nevertheless, a party desiring to impose a constructive trust must show actual or constructive fraud by evidence that is clear, cogent, and convincing as to exclude every reasonable doubt in the mind of the trial court. *Id.* Proof of constructive fraud depends necessarily upon the circumstances of each case. *Id.* Constructive fraud may be proven by a showing that the benefactor made disposition of the property in question in reliance upon an agreement, express or implied, to handle the money in a certain fashion; and a subsequent breach of that agreement. *Id.*

In the present action, there was no evidence that Korman breached his agreement with Henry pertaining to handling the trust assets. Korman deposited Henry's monthly checks from social security and retirement in an account in the trust's name. Henry, with Korman's help, paid his expenses from the trust. Although

Korman borrowed money from the trust, he did so with Henry's express permission. The court found that Korman was to repay the loans, but then determined that such an action was meaningless in that Korman was to receive the remainder of the trust assets after the specific distributions were made. There was no evidence that Korman misrepresented or misled Henry about the trust assets. The trial court was correct in finding that Korman did not breach his fiduciary duty to Henry with regard to the trust. Plaintiffs' fourth point is denied.

In their final point, plaintiffs challenge the trial court's enforcement of the *in terrorem* clause of the trust, which resulted in certain plaintiffs' forfeiting their designated amounts under the trust. Paragraph 9 of the Amendment to Declaration of Trust contains the *in terrorem* clause and reads in relevant part: "If any beneficiary, excluding trustee, makes any allegation or causes litigation either prior to or after his death they will automatically forfeit their designated amount." The court enforced the *in terrorem* clause against those plaintiffs who testified that with knowledge of the existence and implications of the clause, they still wished to pursue the present litigation.

In reviewing the applicability of forfeiture provisions or "no-contest" clauses, courts are to consider the facts of the particular case; and those facts are to be considered and applied with a careful regard for the phrasing or language of those clauses and with the knowledge that forfeitures are not favored by the law. *Chaney v. Cooper,* 954 S.W.2d 510, 519 (Mo.App. W.D.1997). A no-contest or forfeiture provision is to be enforced where it is clear that the trustor (or testator) intended that the conduct in question should result in the forfeiture of a beneficiary's interest under the trust (or will). *Id.*

Here, plaintiffs clearly made allegations and caused litigation after Henry's death, in contravention of the forfeiture clause. Some plaintiffs testified that they knew of the existence of the forfeiture clause and that they wished to proceed with the present cause of action. The court determined to enforce the clause only against those plaintiffs who "were aware" and had received "fair warning" of the risks inherent in pursuing the present litigation. The trial court was entitled to give effect to Henry's intentions as expressed in the *in terrorem* clause as to those plaintiffs. Plaintiffs' fifth point is denied.

The judgment of the trial court is affirmed.

MARY R. RUSSELL, Presiding Judge, CLIFFORD H. AHRENS, J., concur.