Georgie BOROUGHF, Appellant,

v.

BANK OF AMERICA, N.A., Trustee of the James H. Johnson Trust U/A dated July 25, 1989, and Norma A. Ziegler, Respondents.

No. 26288.

Missouri Court of Appeals, Southern District, Division Two.

March 29, 2005.

Stuart H. King, McDonald, Hosmer, King & Royce, P.C., Springfield, for appellant.

Lee E. Poppen, Tina G. Fowler, Lathrop & Gage, L.C., Springfield, for respondents.

ROBERT S. BARNEY, Judge.

In the trial below, Appellant Georgie Boroughf ("Appellant") attempted to admit into evidence, as Exhibit 1, a photocopy of a purported 1997 amendment to a trust instrument, originally executed by James H. Johnson ("Decedent") on July 25, 1989.[1] Under the terms of the purported 1997 amendment to the trust (the "Boroughf photocopy") Appellant was named the successor trustee and sole beneficiary of Decedent's trust estate.

At trial, Respondent Norma Ziegler ("Ziegler") and Respondent Bank of America (collectively "Respondents") objected to the admission of Exhibit 1, on the basis of the best evidence rule and also on the basis that Exhibit 1 lacked sufficient foundation for its receipt as secondary evidence. The trial court excluded Exhibit 1.

At the conclusion of Appellant's presentation of evidence, Respondents each made separate motions for directed verdict. The trial court sustained Respondents' separate motions, denominating them as motions for judgment on all counts at the close of Appellant's evidence and determined that, upon the facts and the law, Appellant was not entitled to relief. The trial court then entered its judgment in favor of Respondents.

Now, in her sole point on appeal, Appellant premises error upon the trial court's grant of Respondent Ziegler's motion for judgment at the close of the evidence, because of the trial court's refusal to admit into evidence Exhibit 1, the Boroughf photocopy.[2] We determine Appellant's point lacks merit. We affirm the judgment of the trial court.

█ In a court-tried case, a motion for judgment on the grounds that upon the facts and the law a plaintiff is not entitled to relief is treated as submitting the issues on the merits. *Kamil, Decker & Co., P.C. v. SMC Props., Inc.,* 998 S.W.2d 818, 819 (Mo.App.1999); *see* Rule 73.01(b), Missouri Court Rules (2004). We therefore review under the principles enunciated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the decision of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. "The appellate court accepts as true the evidence and inferences favorable to the judgment and disregards contrary evidence, mindful that the credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimony." *Tobias v. Korman,* 141 S.W.3d 468, 473 (Mo.App.2004).

The record shows James H. Johnson created the "Revocable Trust Agreement of James H. Johnson," on July 25, 1989 (the "original 1989 trust"). Under this original 1989 trust, in the event that Dece-

---

1. In the trial court, Appellant brought an action against Respondents for unjust enrichment, conversion and for the creation of a constructive trust, together with an action for a declaratory judgment "[d]etermining and declaring the rights and interest of the parties in the trust estate of James H. Johnson."

2. On December 17, 2004, this Court sustained Appellant's motion to dismiss her appeal as to the judgment in favor of Respondent Bank of America. No issue is before this Court relating to any claim of collateral estoppel relating to Appellant's appeal.

dent's wife, Margaret L. Johnson ("Margaret"), were to predecease him, the primary beneficiary of the trust was to be Crystal Gayle Cline ("Crystal"), Margaret's granddaughter through her daughter, Deborah Cline ("Cline").[3] The successor trustee to Decedent was Boatmen's National Bank of Springfield, Respondent Bank of America's predecessor in interest.

On or about July 11, 1990, Decedent amended the original 1989 trust by retyping and replacing pages 4 and 5 of the trust document. These two new pages had a heading at the top of the page which stated, "This page replaces page 4 [and page 5 respectively] of Revocable Trust Agreement of James H. Johnson. Date of Replacement: July 12, 1990," and were signed by Decedent as "Grantor." In addition to this heading, the pages differed from the original 1989 trust, in that Decedent made Ziegler, his niece, the sole trust beneficiary and removed Cline from the instrument altogether. This amended trust (the "Ziegler amendment") was identical to the original 1989 trust in all other ways. Cline testified at trial that she was aware of the Ziegler amendment, but that Decedent did not understand its effect, and that Decedent used it to threaten Cline to "tow the line, or [the Ziegler amendment] was going to go into effect."

On September 26, 1997, Margaret passed away and five months later, on February 13, 1998, Decedent passed away. Upon Decedent's death, Bank of America took possession of the trust res in its capacity as trustee. Thereafter, in March of 1999, Bank of America transferred possession of the trust assets to Ziegler pursuant to the Ziegler amendment.

At a later date, Ziegler contacted Cline and told her that, prior to the property being sold at auction, Cline could remove some of Margaret's belongings from the home which her mother had shared with Decedent. Cline went to the house and hastily removed her mother's possessions from the residence by placing many of the items in boxes and trash bags. Cline then stored the items for a period of time.

Approximately seven months later, Cline, who was embroiled in a lawsuit against Ziegler based on the Ziegler amendment, began sorting through her mother's belongings which she had removed from Decedent's home.[4] Cline testified that in her review of "some paperwork," she discovered the Boroughf photocopy which purported to amend the original 1989 trust instrument. The Boroughf photocopy showed substantial revisions to the original 1989 trust, as amended by the Ziegler amendment.

Like the Ziegler amendment, the Boroughf photocopy had retyped pages containing a heading at the top of the first page which stated: "This page replaces page 1 of Revocable Trust Agreement of James H. Johnson. Date of replacement: November, 25, 1997" and was signed by Decedent as "Grantor." Further, the heading appears at the top of additional pages numbered 2 and 3, as well as 4 and 5. It appears that there were no changes to pages 6, 7, and 8 of the original 1989

---

**3.** In the event that Crystal and her lineal descendants were not living at the time of Decedent's death, the successor beneficiary to Crystal was the American Heart Association.

**4.** Cline testified that in her lawsuit against Ziegler, she had contended that at the time Decedent made out both the original 1989 trust and the Ziegler amendment, he was in-

competent due to certain medications he had been taking; however, on cross-examination, Cline stated that Decedent was not incompetent, but that he might have been incompetent sometimes due to "a real anger problem. If he was angry, you know, he's like most people, when you're angry, he gets completely out of control."

trust; however, the additional five pages discovered by Cline were different from both the original 1989 trust and the Ziegler amendment.

Page 1 of the Boroughf photocopy removed Bank of America as the successor trustee of the trust; appointed Georgie Boroughf as the trustee upon Decedent's death; and, named Paula Smith as Boroughf's successor.[5] Pages 2 and 3 were retyped and reworded to remove certain references to Decedent's deceased wife, Margaret. Page 4 set out that "all assets of the trust go[ ] to the Trustee, Georgie Boroughf, if she still lives, or at her death ... all assets to be divided equally to Paula Smith ... and Jane Roberts." Page 5 deleted references to the "Remainder Trust."

The record reveals that no original of the Borough photocopy was ever found or presented to the trial court. The evidence at trial indicated that neither Cline nor Ziegler had any knowledge that either an original to the Boroughf photocopy or the Boroughf photocopy itself existed prior to its discovery. Cline stated that Decedent kept his estate planning documents in a three-ring blue binder, but outside of the 1989 original trust and the Ziegler amendment, she had no idea what other documents, if any, the blue binder may have contained.

At trial, Appellant's handwriting expert, Don Lock, testified that because he did not have the original to the Boroughf photocopy to examine, he could not positively identify the signature on the Boroughf photocopy as being Decedent's. He stated that in the present situation, he had to give a conservative opinion:

> But the only reason ... I didn't use the term identified, is because [the pages of

the Boroughf photocopy] were machine copies. That's the only reason. I found nothing—I found nothing that would point away from all of [the signatures I examined] being written by the same individual. Everything agreed. No—no unexplainable dissimilarities. Had I had the originals, then it would have been a positive opinion.

Lock went on to state that he saw "no unexplainable difference[s]" in the various signatures; that in all of the signatures he examined, the letters were slanted in the same direction; and, that the line quality of the signatures was similar.

On the other hand, Lock testified that even though one of the signatures on the Boroughf photocopy was on top of a portion of the typewritten words, he could not necessarily preclude a finding that the signature had been forged by cutting and pasting Decedent's signature onto the document. Ultimately, Lock's testimony turned on the fact that he felt hindered in his examination because he was unable to examine the original document and could only examine a photocopy.

Cline testified that the signatures on the Boroughf photocopy appeared to her to be that of Decedent.

■ Appellant asserts the best evidence rule was met because there was "uncontroverted evidence" that the original to the Boroughf photocopy "was unavailable through no fault or act" of Appellant; that Lock's expert testimony and Cline's lay witness testimony was sufficient to prove Decedent's signature on the Boroughf photocopy was not a forgery; and, that the fact that Cline located and presented the Boroughf photocopy "under circumstances

---

**5.** According to the record, Decedent had been seeing Boroughf socially since Margaret's death and, according to Boroughf, had proposed to her prior to his death. We have been unable to find any information about Paula Smith in the legal file.

... directly contrary to her financial interest" further illustrated the Boroughf photocopy's authenticity.

■ "The 'best evidence' rule is that generally the terms of a document must be proved by production of the original document." *Redpath v. Missouri Highway and Transp. Comm'n,* 783 S.W.2d 429, 431 (Mo.App.1989). The "best evidence rule applies only when the evidence is offered to prove the terms or contents of a writing or recording." *Cooley v. Dir. of Revenue,* 896 S.W.2d 468, 470 (Mo. banc 1995). In other words, the "principle is limited to proof of the operative terms of substantive written documents." *Chevalier v. Dir. of Revenue,* 928 S.W.2d 388, 391 (Mo.App. 1996). Generally, this involves a witness "purporting to testify as to his or her observation of the operative terms of a substantive written document." *Id.* at 392. "The principal reason for the rule is the danger of mistransmission of the contents of a writing when evidence other than the writing itself is offered for the purpose of proving its terms." *Cooley,* 896 S.W.2d at 470. "For example, the exact words used are critically important in the case of deeds, wills or contracts, where even a slight variation of those words may mean a great difference in the rights conferred under the document." *Id.* "The trial court of course, is allowed broad discretion in determining whether the best evidence rule should be applied." *Chevalier,* 928 S.W.2d at 392.

■ "A copy reproduced by a photographic duplicating process is not admissible under the best evidence rule." *Tobias,* 141 S.W.3d at 473; *see also Layman v. Southwestern Bell Tel. Co.,* 554 S.W.2d 477, 482 (Mo.App.1977). Here, the trial court did not abuse its discretion in excluding the Boroughf photocopy from evidence on the basis that the best evidence rule

barred its receipt. *See Tobias,* 141 S.W.3d at 473.

■ However, the "best evidence rule does not preclude the introduction of secondary evidence." *Schnucks Twenty–Five, Inc. v. Bettendorf,* 595 S.W.2d 279, 283 (Mo.App.1979). "Secondary evidence may ... be admitted if the offering party demonstrates that the primary evidence is lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary, or is otherwise unavailable or inaccessible." *Tobias,* 141 S.W.3d at 473. In particular, a "photocopy as secondary evidence is admissible if there is a foundation showing that: '(1) the original is unavailable, (2) the unavailability is not the proponent's fault, and (3) the secondary evidence is trustworthy.' " *Ousley v. Casada,* 985 S.W.2d 757, 758 (Mo. banc 1999) (quoting *State v. Zimmerman,* 886 S.W.2d 684, 691 (Mo.App.1994)). "The trial court is vested with wide discretion in determining the sufficiency of a foundation for the introduction of secondary evidence." *Interstate Distrib., Inc. v. Freeman,* 904 S.W.2d 481, 484 (Mo.App.1995).

■ In the present matter, Appellant attempted to introduce the Boroughf photocopy into evidence as the sole proof of the validity of Appellant's claim. As previously related, in order for the trial court to consider the photocopy as secondary evidence, Appellant had to prove that the original of the Boroughf photocopy was unavailable or lost through no fault of Appellant *and* that the photocopy was trustworthy. *See Student Loan Mktg. Ass'n v. Holloway,* 25 S.W.3d 699, 705 (Mo.App. 2000). There was no evidence presented showing that the original to the Boroughf photocopy was lost. Additionally, Appellant did not attempt to demonstrate that the original document was outside the jurisdiction or otherwise unavailable or inaccessible. Instead, to prove up the

trustworthiness of the Boroughf photocopy Appellant tried to prove that the signatures on the document were not forged.

When dealing with copies of original documents, the correctness of a copy may be proved by the testimony of a person who has compared the copy with the original and found it to be correct. *Scrivner v. Am. Car & Foundry Co.*, 330 Mo. 408, 50 S.W.2d 1001, 1009 (1932). Here, there is no such testimony. Cline's testimony was limited to her assertion that the signature on the Boroughf photocopy looked like Decedent's signature.[6] However, Cline was not present at the time the original to the Boroughf photocopy was drafted, read, executed, or signed by Decedent. She neither typed it herself nor physically made a copy of the instrument herself. She never saw the original document and, therefore, could not attest that the Boroughf photocopy was an exact copy of the original document. She was not even aware of the Boroughf photocopy's existence until she "discovered" it some four years after Decedent's death and no one had previously informed her of its existence. When she did discover the Boroughf photocopy it was not located in the usual place where Decedent kept his estate planning documents; indeed, the Boroughf photocopy was not even found in Decedent's possession at the time of his death. There was not a single witness in this matter that could offer "competent testimony of the genuineness and the fact of the original document" or could testify that "the writing [was] in fact a true copy." *Scrivner,* 50 S.W.2d at 1009.

Furthermore, there was no evidence indicating if the original to the Boroughf photocopy was either lost or destroyed; nor was there testimony showing that the document was in the possession or control of an adversary. We cannot say there was sufficient proof that the original to the Boroughf photocopy was unavailable or lost, a necessary pre-requisite to admission as secondary evidence. *See Ousley,* 985 S.W.2d at 758.

Also, in ruling against Appellant's motion to receive the Boroughf photocopy into evidence, the trial court stated:

> Well, I mean, [Respondent Ziegler's counsel] has listed a laundry list of things that are concerns with me. I— I—it's also telling to me that Ms. Cline has testified that—or at least at one point, was—was indicating that [Decedent] was incompetent, and that incompetency has—has since, I guess, gone away. In fact, her testimony yesterday was, he was as competent in '90 as he was in '97, as a result of [Ziegler's counsel's] questions as to the same thing, whether he was competent or not competent. [Cline] also testified that [Decedent] used the '90 amendment as a threat. That concerns me again about the reliability of this, with—with all of those things listed by [Ziegler's counsel]. The objections by [Respondents] are sustained. I will not admit [Appellant's] Exhibit 1.

The trial court was free to believe or to disbelieve Cline's testimony concerning the trustworthiness of the Boroughf photocopy. "We defer to the trial court on determinations of witness credibility." *Luebbert v. Simmons,* 98 S.W.3d 72, 77 (Mo.App.2003). Absent a clear abuse of discretion, the appellate court will not in-

---

**6.** Lock's testimony about Decedent's signature was limited to his statement that there were "no unexplainable dissimilarities" between Decedent's signatures on the *Boroughf*

*photocopy* and Decedent's signatures on the other documents he examined on behalf of Appellant.

terfere with rulings on the admissibility of evidence.

"As no proper foundation was presented to admit [the Boroughf photocopy into evidence] and as the document had no legal effect, there was no error in excluding it." *Ousley,* 985 S.W.2d at 758. There was no abuse of discretion in the trial court's refusal to admit the Boroughf photocopy into evidence. *See Interstate Distrib.,* 904 S.W.2d at 484. Given the factual circumstances of this case, without the receipt of the Boroughf photocopy into evidence Appellant was unable to substantiate her claims against Respondent Ziegler. *See Tobias,* 141 S.W.3d at 474. Accordingly, there was substantial evidence supporting the trial court's granting of Respondent Ziegler's motion for judgment at the close of her evidence. *See id.* at 473.

The judgment of the trial court is affirmed.

PARRISH, P.J., and SHRUM, J., concur.