**WHEELHOUSE MARINA REAL ESTATE, L.L.C., Appellant**

v.

**Anthony BOMMARITO d/b/a Docknockers Bar & Grill and Docknockers, L.L.C., Respondents.**

**No. SD 28997.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 15, 2009.

Donald E. Heck, Chesterfield, MO, for Appellant.

Lewis Z. Bridges, Curran & Sickal, Osage Beach, MO, for Respondents.

JOHN E. PARRISH, Judge.

Wheelhouse Marina Real Estate, L.L.C., (Wheelhouse Real Estate) brought an unlawful detainer action against Anthony Bommarito and Docknockers, L.L.C., (defendants) seeking rent and possession regarding premises in Camden County, Missouri, known as Docknockers Bar & Grill. Judgment was entered for defendants. This court affirms. The case, however, is remanded with instructions that a scrivener's error that is identified in n. 3, *infra,* be corrected.

There are a number of related entities and people who were involved with the events that led to this appeal. An understanding of their identities is relevant to the facts recited in this opinion. The individual defendant in the unlawful detainer action is Anthony Bommarito. He is the grandson of Ralph Keeney, Jr., (Keeney Jr.) who is the owner of Wheelhouse Marina Holding, L.L.C. (Wheelhouse Holding) and Wheelhouse Real Estate. Ralph Keeney, III, (Keeney III) is the son of Keeney Jr. and the uncle of Anthony Bommarito. Keeney III is a manager of Wheelhouse Holding. Mary Gordon, a previous owner of the property that is the subject of this action, was Keeney Jr.'s secretary.

Anthony Bommarito operates Docknockers Bar & Grill on property presently owned by Wheelhouse Real Estate. He took possession of the property May 30, 1993. At that time the property was owned by Mary Gordon. The following is a chronology of documents relative to the property where Docknockers Bar & Grill is located.

March 3, 1993 Date of one-page document entitled COMMERCIAL LEASE that identifies the "Leased Premises" as a certain commercial building. The document identifies Ralph Keeney as "Landlord" and Tony Bommarito as "Tenant(s)."[1] It is in evidence as Defendants' Exhibit A.

May 19, 1993 Date of notary public acknowledgement on document entitled RESTURANT [sic] RENTAL AGREEMENT bearing signatures of Ralph Keeney "acting in owners [sic] behaft [sic] Mary Sgordan [sic]" and Anthony Bommarito identified as "Tenant Anthony Bommarito."[2] The property is where Docknockers Bar & Grill is located. It is in evidence as Petitioner's Exhibit 2.

September 29, 1993 Date of notary public acknowledgement on quitclaim deed bearing date of September 1993 (the day of the month does not appear on the instrument). Grantor on the

---

1. The instrument states the use of the leased premises is for "Restaurant & cocktail lounge." It states it is for a term of 20 years "commencing on the *3* day of *March, 1993* ending on the *3* day of *March 192013* [sic]." It provides for annual rent of $7,200 payable in monthly installments of $600.

2. The instrument states it is an agreement for the rental of a restaurant "for the season starting June 1, 1993 and ending November 1, 1993 for six months at the rate of six hundred dollars per month."

deed is Mary S. Gordon. Grantee is Keeney Jr. The property includes that where Docknockers Bar & Grill is located.

April 28, 2006 Date of quitclaim deed to property that includes the property where Docknockers Bar & Grill is located. Keeney Jr. is grantor. Wheelhouse Holding is grantee.

April 28, 2006 Date of quitclaim deed to property that includes the property where Docknockers Bar & Grill is located. Wheelhouse Holding is grantor and Wheelhouse Real Estate is grantee.

In 2006 Wheelhouse Real Estate notified Anthony Bommarito that his "month to month lease [was to be] terminated as of **12 p.m. on September 3, 2006.**" Bommarito was advised that if he remained on the premises after the stated date, an unlawful detainer action would be filed seeking "eviction, past due rentals, attorney's fees, and damages, if any." Keeney III notified Bommarito that he would be required to execute a new lease in order to be permitted to continue to occupy the property. Bommarito had paid $600 per month rent prior to that time. He contended that he was occupying the property under the terms of a 20–year lease that was dated March 3, 1993, that had been executed by he and Keeney Jr. *See* n. 1, *supra*. Bommarito did not execute a new lease.

The trial court entered judgment that recited the appearances of the parties; that at the conclusion of the evidence, the parties were permitted to submit "post trial briefs"; that following receipt of the briefs, the trial court found the issues in favor of the defendants. The judgment states the following findings:

It is clear to the Court that Ralph Keeney, III[sic][[3]] and defendant Bommarito entered into a lease agreement that was to become effective when Mr. Keeney acquired title to the subject property, which he did. Defendant [Anthony Bommarito] is not in breach of the lease. Any improvements made by defendant was [sic] done with the knowledge and consent of [Keeney III], and landlord not only approved said improvement but continued to accept rental payments knowing of the improvements. Court further finds that said argument re: improvements is beyond the scope of the pleadings and defendants have not consented to trying this issue.

The Court finds Judgment should be entered for defendants. The Court enters Judgment in favor of defendants and against Plaintiffs [sic][[4]]. All costs are assessed against Plaintiffs [sic].

■ Wheelhouse Real Estate's Point I states:

The trial court erred in failing to find that the six month rental contract between Mary S. Gordon and Respondent Anthony Bommarito dated June 1, 1993 (Appendix A) constituted a novation thereby terminating all prior agreements, if any, including the alleged lease contract dated March 3, 1993 ([A]ppendix B), regarding the rental of the real

---

**3.** The evidence regarding the March 3, 1993, document, which was admitted in evidence as Defendants' Exhibit A, was that the lease was negotiated by Keeney Jr. and Anthony Bommarito. The persons whose names appear on the document are Anthony Bommarito as "Tenant(s)" and Keeney Jr. as "Landlord." The naming of Keeney III in the findings included in the judgment appears to be a scrivener's error. The findings in this regard, however, may be corrected upon remand.

**4.** The judgment states the names Wheelhouse Real Estate and Ralph Keeney III as "Plaintiff," singular. The amended petition on which the case was tried identifies only one plaintiff, Wheelhouse Real Estate.

estate known as Dockknockers [sic] Bar and Restaurant, because all prior agreements merged into the last entered into agreement as an accord. As a result no other agreements to rent existed and Respondent was after November 1993 a month to month tenant subject to termination upon proper notice.

"Appendix A" to Wheelhouse Real Estate's appellant's brief is a copy of the one paragraph document entitled "RESTU-RANT [sic] RENTAL AGREEMENT" identified in the chronology of documents that appears, *supra*, as the document that has the notary public acknowledgment of May 19, 1993. The document states in its entirety, less the notary acknowledgment:

### RESTURANT [sic] RENTAL AGREEMENT

I, Anthony Bommarito, agree to rent the restaurant and fixtures at 700 Crow Road for the season starting June 1, 1993 and ending November 1, 1993 for six months at the rate of six hundred dollars per month. All utilities will be paid by Anthony Bommarito also to include the apartment at the end on the building. If all goes well the rental can be extended beyond this year providing all bills are paid and the property is kept clean. There must also be no complaints from the surrounding property owners of the noise. This agreement is binding for June 1, 1993 till November 1, 1993 providing that all liscense [sic] and insurance requirements are met.

/s/ Ralph Keeney

Ralph Keeney acting in owners [sic] behaft [sic] Mary Sgordan [sic].

/s/ Anthony J. Bommarito

Tenant Anthony Bommarito

■ Wheelhouse Real Estate's assertion of "novation" is raised for the first time on appeal. The broad definition of novation is "a substitution of a new contract or obligation for an old one which is thereby extinguished." *W. Crawford Smith, Inc. v. Watkins*, 425 S.W.2d 276, 279 (Mo.App. 1968).

Wheelhouse Real Estate's petition asserted that Bommarito had a six-month lease with its predecessor in title, Mary Gordon, that expired November 1, 1993; that upon its expiration, Bommarito's continued occupancy of the premises was on a month-to-month basis. Wheelhouse Real Estate did not plead a novation. It did not plead that the six-month lease was a successor agreement that extinguished a prior lease. The petition alleged only that there was a lease that expired November 1, 1993; that subsequent occupancy was a month-to-month tenancy that had terminated. Because no issue of novation was raised in the trial court, the issue was not preserved for review by this court. *Stewart v. Jones*, 90 S.W.3d 174, 180 (Mo.App. 2002). *See also Hocker Oil Co., Inc. v. Barker–Phillips–Jackson, Inc.*, 997 S.W.2d 510, 522 (Mo.App.1999); *E.D. Mitchell Living Trust v. Murray*, 818 S.W.2d 326, 329 (Mo.App.1991). Point I is denied.

■ Point II is directed to the admission in evidence of the document entitled "COMMERCIAL LEASE" dated March 3, 1993. It was admitted in evidence as Defendants' Exhibit A. Point II argues that the trial court erred in admitting the exhibit in evidence over Wheelhouse Real Estate's objection because it "was an incomplete photocopy and by finding that [Keeney Jr.], Wheelhouse Marina's predecessor in title, signed the lease because filling in blanks at the top of a form lease does not constitute a signature or acceptance of a contract." Point II further asserts that the text of the document was an invitation to offer a contract reserving its drafter the right to accept its terms; that "[t]he offer was rejected by a lapse of

a reasonable amount of time after appellant[5] failed to sign the lease document and by [Bommarito] executing the Restaurant Rental agreement dated May 19, 1993"; that for those reasons, Bommarito was a month-to-month tenant.

▮ Point II complains of the trial court's ruling in admitting Defendants' Exhibit A for multiple reasons. Point II's complaints appear to be (1) that the document was incomplete; (2) that the document was a photocopy; (3) that the written name of Ralph Keeney that appears at the top of the document does not suffice as a signature; and (4) that its text does not manifest a contract but is "merely an invitation to offer to contract." Arguably, this amounts to the collapsing of disparate contentions of error into a single point relied on and, therefore, violates Rule 84.04(d) and preserves nothing for this court's review. *See Rushing v. City of Springfield,* 180 S.W.3d 538, 539 (Mo.App.2006).

"Violations of Rule 84.04 are grounds for a court to dismiss an appeal." *Shochet v. Allen,* 987 S.W.2d 516, 518 (Mo. App.1999). "Whether an appeal will be dismissed for failure to comply with Rule 84.04 is discretionary." *Bamber v. Dale Hunt Trucking,* 107 S.W.3d 489, 490 (Mo.App.2003), *quoting Hampton v. Davenport,* 86 S.W.3d 494, 496 (Mo.App. 2002). "That discretion is generally not exercised unless the deficiency impedes disposition on the merits. 'A brief impedes disposition on the merits where it is so deficient that it fails to give notice to [the court] and to the other parties as to the issue presented on appeal.'" *Keeney v. Missouri Hwy. & Transp. Com'n,* 70 S.W.3d 597, 598 n. 1 (Mo.App.

2002), quoting *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo.banc 1997). *State v. McDaniel,* 236 S.W.3d 127, 132 (Mo.App.2007).

At trial, when Defendants' Exhibit A was offered in evidence, Wheelhouse Real Estate objected to its admission as follows.

Your Honor, we object to Defendants' Exhibit A. Object on several reasons. The best evidence would be—Well, I'm not exactly sure why it's being offered into evidence, but if it's being offered into evidence to prove that it is a lease, we object on the basis of best—of the best evidence rule. They're trying to use a photocopy in lieu of an original document. Examination of that document and the testimony was this is a piece of paper sent by [Mr. Bommarito's lawyer] to the witness. There is no back side of it. There is some handwriting on the front. There is no signature at the bottom for Mr. Keeney, and it's an incomplete document on its face.

The best evidence rule prohibits admission into evidence of exhibits, a photocopy, when an objection is made as to its authenticity or completeness. We object on the basis of completeness.

▮ A party may not advance on appeal an objection to evidence that differs from the objection presented to the trial court. *Rogers v. B.G. Transit Corp.,* 949 S.W.2d 151, 153 (Mo.App.1997). Point II goes beyond the objection Wheelhouse Real Estate made at trial. The objection to Defendants' Exhibit A was that it violated the best evidence rule because the exhibit was a photocopy and was incomplete. Nevertheless, although Point II may not succinctly recite the same basis as a claim of error that was stated to the trial court,

---

**5.** This court infers that the reference to "appellant" was intended to refer to Keeney Jr., although he is not a party to this action. It appears that Wheelhouse Real Estate did not take title to the property in question until a quitclaim deed dated April 28, 2006, Plaintiff's Exhibit No. 5, was executed and delivered to it by Wheelhouse Holding.

it does not impede this court's ability to address the issues raised at trial on the merit. Point II will be considered insofar as it is consistent with the objection made at trial.

■ This court's understanding of the objection is that it contended that Defendants' Exhibit A should not be admitted in evidence for the reason that the exhibit violated the best evidence rule in that it was an incomplete photocopy of an original writing.

"The 'best evidence' rule is that generally the terms of a document must be proved by production of the original document." *Redpath v. Missouri Highway and Transp. Comm'n*, 783 S.W.2d 429, 431 (Mo.App.1989). The "best evidence rule applies only when the evidence is offered to prove the terms or contents of a writing or recording." *Cooley v. Dir. of Revenue*, 896 S.W.2d 468, 470 (Mo.banc 1995). In other words, the "principle is limited to proof of the operative terms of substantive written documents." *Chevalier v. Dir. of Revenue*, 928 S.W.2d 388, 391 (Mo.App.1996).

*Boroughf v. Bank of America, N.A.*, 159 S.W.3d 498, 503 (Mo.App.2005).

■ A photocopy of a document is not admissible under the best evidence rule. *Id.* However, under certain circumstances a photocopy may be admitted as secondary evidence. This occurs if the

offering party demonstrates that the primary evidence, e.g., the original copy of a document, is lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary party, or is otherwise unavailable or inaccessible. *Id.* A photocopy as secondary evidence is admissible if there is a foundation showing that: "(1) the original is unavailable, (2) the unavailability is not the proponent's fault, and (3) the secondary evidence is trustworthy." *State v. Zimmerman*, 886 S.W.2d 684, 691 (Mo.App.1994). *See also Ousley v. Casada*, 985 S.W.2d 757, 758 (Mo.banc 1999). "The trial court is vested with wide discretion in determining the sufficiency of a foundation for the introduction of secondary evidence." *Interstate Distributing, Inc. v. Freeman*, 904 S.W.2d 481, 484 (Mo. App.1995).

Mr. Bommarito testified that Keeney Jr., the person the evidence disclosed prepared the original of Defendants' Exhibit A, "stuck [the original copy] in a file." Bommarito had not seen the original since that time. He told the trial court that the photocopy he had, Defendants' Exhibit A, was a true copy of the original. He stated he was not aware of there being any other pages. The trial court did not abuse its discretion in admitting Defendants' Exhibit A in evidence.[6] Point II is denied.

■ Point III argues that the trial court erred in permitting oral testimony

---

6. Although Wheelhouse Real Estate did not address the matter of Keeney Jr. having written his name only at the top of the document, arguably by alluding to that fact and asserting the exhibit was incomplete, the question of the effect of Keeney Jr. writing his name only at the top of the page as "LANDLORD" was preserved for this court's review. There was testimony that the name was written in the manner Keeney Jr. regularly wrote his name. Although the usual place for a signature on a contract is at the close of the contract, it is sufficient if the signature appears anywhere in the written contract and is intended as a

signature. *Eiman Brothers Roofing Systems, Inc. v. CNS Intern. Ministries, Inc.*, 158 S.W.3d 920, 922 (Mo.App.2005). The placement of the signature is not dispositive of intent. *Id.* There was evidence that Keeney Jr. prepared the document; that the terms written into the blank spaces on the form used for that purpose were written by Keeney Jr.; that he was aware of the fact he had entered into the lease with Mr. Bommarito. There was substantial evidence that Keeney Jr. intended Defendants' Exhibit A to be a 20-year lease with Bommarito.

that Defendants' Exhibit A, dated March 3, 1993, was executed in November 1993; that this violated the parol evidence rule. Wheelhouse Real Estate contends this was "evidence modifying unambiguous terms of a real estate lease in order to claim that the March 3, 1993 agreement was the final agreement ... and to claim that the March 3, 1993 lease was entered into after the contract between Mary S. Gordon and [Bommarito] dated May 19, 1993."

Mr. Bommarito was permitted to testify about the relationship between the two lease documents in evidence, the one entitled "COMMERCIAL LEASE" (Defendants' Exhibit A), and the one entitled "RESTURANT [sic] RENTAL AGREEMENT" (Petitioner's Exhibit 2). His testimony was permitted over the objection of Wheelhouse Real Estate. Wheelhouse Real Estate contended his testimony was parol evidence that undertook to change or modify terms of a written instrument. The following questions were asked Mr. Bommarito and the following answers given by him.

Q. ... In March of 1993, was there a written document prepared?

A. Yes.

Q. And which—what did it provide for?

A. It just provided a signed and notarized signature for record control purposes.

Q. I'll hand you what's been marked as—and admitted, I believe, as Petitioner's Exhibit No. 2, using your copy; is that all right? Is that a copy of that temporary—or that lease that you say was in March?

A. It is.

Q. And what was the purpose of this document?

. . .

Q. Was this provided to the Department of Liquor Control?

A. It was.

Q. Was it part of your liquor license application?

A. It was.

Q. Now, did you have discussions with your grandfather concerning an extension of this lease?

A. Yes.

Q. And in fact, included within this lease is the provision—if you'd look at the fourth line down, the first paragraph. Can you tell me what that says? The first sentence that starts, there, "If all goes well."

A. Oh. If all goes well, the rental can be extended beyond this year provided all bills are paid and the property is kept clean.

Q. Did you have a discussion with your—a late—a later discussion with your grandfather concerning extension of your agreement regarding rental of that property?

A. I did.

Q. And when did you have that discussion?

A. At the end of the season.

Q. Would that be November?

A. Yes.

Q. Of 1993.

A. Correct.

Q. Now, I've handed—You've previously been handed and you've looked at Plaintiffs' [sic] Exhibit—excuse me—Defendants' Exhibit A.

A. Yes.

. . .

Q. Is the—The date on this lease is—the term of the lease is of [sic] 3 March of 2000—or 1993; is that correct?

A. That's correct.

Q. And the term extends until March of 2013.

A. Correct.

Q. But this was not alerted to you until November of 1993; is this correct?

A. That is correct.

Q. Do you know the reason for the—the date of March 3?

A. Yes.

[At this time a further objection was posed as to this being parol evidence to modify or vary the terms of a written contract. The objection was overruled; the trial court agreeing that the objection would be considered a continuing objection.]

Q. Did you discuss that date with your grandfather?

A. Yes.

Q. And what did he say about the purpose of putting March 3rd on it?

A. That way, he didn't lose a year on the 20–year lease.

. . .

Q. For Docknockers Restaurant?

A. That's correct.

Q. And it was tendered by you on what date; do you recall?

A. Probably August.

 "The parol evidence rule . . . prohibits the *contradiction* of integrated contracts." *Gibson v. Harl*, 857 S.W.2d

260, 269–70 (Mo.App.1993)(emphasis in original). It does not apply to parol testimony that does not contradict the terms of an integrated agreement. *Id.* at 270. Neither Defendants' Exhibit A nor Petitioner's Exhibit 2 is ambiguous on its face. Only by considering them together would any question arise as to the meaning of either. Both leases are directed to the same property. The tenant is the same in both leases. The term of one extends beyond the term of the other. The amount of monthly rental is the same in both. Regardless, "[e]ven a complete and integrated contract must be interpreted. Admission of oral testimony of agreements or negotiations contemporaneous with the execution of the written agreement are admissible to establish the meaning of the contract." *Id.*

Even if the existence of the two leases with overlapping periods of occupancy would be deemed a latent ambiguity, Point III fails.[7] The testimony of Anthony Bommarito did not contradict the terms of either lease. It explained the circumstances that existed at the time each was executed. The parol evidence rule does not apply to testimony that does not contradict the terms of a contract. *Cameron v. Morrison*, 901 S.W.2d 171, 177 (Mo.App. 1995), *quoting Gibson v. Harl, supra.* The dates on the respective instruments have meaning only to the extent they identify the terms of the leases.[8] The trial court

---

7. "Ambiguities in written instruments may be of two kinds: (1) patent, arising upon the face of the documents, and (2) latent. A 'latent ambiguity' arises where a writing on its face appears clear and unambiguous, but some collateral matter makes the meaning uncertain." *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 362 (Mo.banc 1991) (citations omitted.).

8. The answer to Wheelhouse Real Estate's contention that the date when Keeney Jr. acquired title to the leased property prevents Bommarito from having a long-time lease is

that paragraph 6 of the lease (Defendants' Exhibit A) provides otherwise. It states:

> If for any reason the Landlord [Keeney Jr.] cannot deliver possession of the leased property to the Tenant [Tony Bommarito] when the lease term commences [the term of the lease was stated as "commencing on the 3 day of *March, 1993* "], this Lease shall not be void or voidable, nor shall the Landlord be liable to the Tenant for any loss or damage resulting therefrom. However, there shall be an abatement of rent for the period between the commencement of the

did not err in allowing the testimony of Tony Bommarito about which Point III complains. Point III is denied.

■ Point IV argues that the trial court erred in finding that the 20–year lease, Defendants' Exhibit A, was valid. Point IV argues this was error because the lease conveyed rights that Keeney Jr. had no right to grant; that he did not own the leased premises. As stated in n. 8, *supra*, Paragraph 6 of the lease absolved the landlord, Keeney Jr., of liability "[i]f for any reason" he could not deliver possession of the leased property at the time the lease specified its term commenced.

■ Paragraph 6 is a valid provision. It is in the nature of a condition precedent; a condition that must be fulfilled before a duty to perform arises under a contract. *Jetz Service Co., Inc. v. Botros*, 91 S.W.3d 157, 161 (Mo.App.2002). The condition must occur before the duties prescribed by the contract must be performed. The lease was neither void nor voidable on the basis of the condition of Keeney Jr.'s title interest in the property. Point IV is denied.

Wheelhouse Real Estate's Point V is directed to the trial court's ruling on a motion filed after trial. The motion contended that the judgment "should be amended so as to reflect the unpaid rents [due to Wheelhouse Real Estate] through January 31, 2007 so as to dispose of all issues before the Court." The trial court denied the motion.

■ Point V contends that "[t]he trial court erred in not determining all amounts due to [Wheelhouse Real Estate] from [Bommarito] for unpaid rents as damages ... and by the courts [sic] not granting [Wheelhouse Real Estate's] Post Judgment Motion to Amend the Judgment to

award past due rents because past due rents are damages that are compensable and should have been determined by the court and awarded."

The trial court's entry denying the motion explains:

AFTER HEARING ARGUMENTS THE COURT FINDS THAT [ANTHONY BOMMARITO WAS] NOT IN VIOLATION OF THE LEASE AGREEMENT AS [ANTHONY BOMMARITO] TENDERED THE AMOUNT OF RENT DUE ($600 PER MONTH)[.] [WHEELHOUSE REAL ESTATE] FILED CLAIM FOR UNLAWFUL DETAINER ON ALLEGATION THE $4200 PER MONTH WAS DUE AND THE COURT REJECTED SAID CLAIM, ALTHOUGH [BOMMARITO] OWES [WHEELHOUSE REAL ESTATE] MONEY FOR RENT DUE TO [WHEELHOUSE REAL ESTATE]. [WHEELHOUSE REAL ESTATE] REFUSED TO ACCEPT RENT. THE AMOUNT OWED WAS NOT AN ISSUE BEFORE THIS COURT ON THIS CASE. SAID MOTION IS DENIED.

The action Wheelhouse Real Estate brought and tried was one for Unlawful Detainer. *See* § 534.030.[9] The trial court found for Anthony Bommarito. Wheelhouse Real Estate did not satisfy the requirements that would have entitled it to judgment. Section 534.330 entitles a petitioner who makes a complaint on the basis of unlawful detainer to judgment "[i]f the ... finding of the judge is for the complainant." That did not occur.

■ "A civil action is commenced by filing a petition with the court." Rule

lease term and the time when the Landlord delivers possession.

**9.** References to statutes are to RSMo 2000.

53.01. The petition identifies the theory of recovery that is being pursued.

Filing a petition would serve little purpose if the court before which the case was filed were free to disregard the pleading and enter judgment on a theory of recovery other than that set forth in the petition. If that were permissible, an opposing party would be at the whim of a plaintiff's last minute decision to seek judgment on any theory it wished although that theory differed from the cause of action the opposing party was prepared to defend.

*Citibank S.D. v. Miller*, 222 S.W.3d 318, 322 (Mo.App.2007).

As in *Citibank*, the record does not disclose that the petition in this case, an unlawful detainer petition, was amended (or that any request was made to amend it). The fact that Wheelhouse Real Estate may be entitled to rental payments from Bommarito based on the 20–year lease pursuant to which Bommarito occupied the premises did not entitle Wheelhouse Real Estate to have the judgment amended. Wheelhouse Real Estate brought the action the trial court heard on a different theory of recovery than that which would have permitted it to recover rent. *Roy A. Scheperle Const. Co. v. Seiferts, Inc.*, 687 S.W.2d 222, 223 (Mo.App.1984). The trial court did not err in denying Wheelhouse Real Estate's motion to amend the judgment. Point V is denied.

Although the foregoing resolves the issues presented by the parties, the clerical error in the findings that is included in the judgment and which is noted in n. 3, *supra*, should be addressed by the trial court. The case is remanded for such correction as may be appropriate of the names that appear in the findings. The trial court is directed to review the judgment for the purpose of determining the correct names of the persons it identified in the findings that are set forth in its judgment and to make such corrections as may be appropriate. *See, e.g., Moore v. Beck*, 664 S.W.2d 15, 19–20 (Mo.App.1984). Other than the corrections that may be required, as aforesaid, the judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.

