Emma FRANCE, Appellant,

v.

Rita HUNTER, individually, and in her
Capacity as Public Administrator of
Jasper County, Missouri, Charlene
Kelly, individually, and as a Deputy
Public Administrator of Jasper Coun-
ty, Missouri, and Stephen J. Bazzano,
D.O., Respondents.

No. SD 31454.

Missouri Court of Appeals,
Southern District,
Division Two.

April 6, 2012.

Motion for Rehearing and Transfer Denied
April 30, 2012.

Application for Transfer
Denied July 3, 2012.

R. Lynn Myers, Springfield, MO, for Appellant.

M. Douglas Harpool, Springfield, MO, for Respondents Hunter and Kelly.

Ron Mitchell and Phillip D. Greathouse, Joplin, MO, for Respondent Bazzano.

WILLIAM W. FRANCIS, JR., Presiding Judge.

Appellant Emma France ("France") appeals the trial court's grant of summary judgment in favor of Rita Hunter ("Hunter"), Charlene Kelly ("Kelly"), and Stephen Bazzano, D.O. ("Dr. Bazzano") (collectively "Respondents"), on her claims alleging liability for loss of a portion of her rights—pursuant to 42 U.S.C. [section] 1983 (1996)—related to guardianship and conservatorship proceedings. We affirm the judgment of the trial court.

### Factual and Procedural Background

France, a 95-year-old widow, was living in Carthage, Missouri, when the Department of Health and Senior Services, Division of Senior Services ("DHSS"), was contacted after a bank employee reported France "was requesting numerous, large

money orders and writing checks to suspicious lotteries/sweepstakes." France had continually been the victim of lottery and sweepstake scams in her advancing years, resulting in a significant loss of her savings. France was hospitalized in December 2006 after experiencing suicidal ideations and depression associated with her financial losses.

DHSS conducted an investigation of France and completed a "Court Summary Guardianship/Conservatorship Review" ("Summary"). The Summary explained numerous circumstances over the preceding two years evidencing France's judgment was impaired, that France denied herself adequate clothing and nutrition in order to have money to send to the scam callers, and that France would benefit from a guardian and conservator. The Summary also stated that France had been discharged from the hospital with orders to follow through with her treating psychiatrist, Dr. Jagdish Ragade, but France had refused to do so and did not fill her prescriptions that were prescribed upon her discharge. Dr. Ragade completed a medical certificate advising a guardianship and a conservatorship were needed for France.

On April 16, 2007, a "Petition for Appointment of Guardian, Conservator, Guardian ad Litem and Conservator ad Litem for Incapacitated Person (RSMo. 475.060 Supp.1984)" ("Petition") was filed with the Probate Division of the Circuit Court of Jasper County ("Probate Division"). The Petition alleged in part that an emergency existed which presented a substantial risk to France's person and financial resources by reason of France's mental and physical state.

On April 17, 2007, Shannon McKinney ("McKinney") was appointed attorney for France. The Probate Division also set a hearing for May 16, 2007, on the Petition, and sent a notice of hearing to France.

On April 25, 2007, the Probate Division issued "Letters of Guardianship ad Litem of Incapacitated Person [and] Letters of Conservatorship ad Litem of Disabled Person" appointing Hunter as the "guardian ad litem and conservator ad litem" for France, and authorizing and empowering Hunter

> to perform the duties of such guardian ad litem and conservator ad litem as provided by law under the supervision of the Court having care and custody of the person of the above-named alleged incapacitated and disabled person for a period not to exceed thirty (30) days or as continued by the Court.

McKinney did not object to the issuance of the temporary letters of guardianship and conservatorship.

On May 15, 2007, Kelly transported France to Dr. Bazzano's office for an examination.[1] Dr. Bazzano maintains a private practice of medicine in Kansas and Missouri, and is not an employee of the state of Missouri, state of Kansas, or Jasper County, Missouri. He has had a family practice for 40 years with most of his patients being "geriatric"—over the age of 65. Dr. Bazzano did not know who made the appointment for France. Additionally, Dr. Bazzano did not communicate with Hunter, Kelly, or anyone else from the office of the Jasper County Public Administrator prior to France's May 15, 2007 appointment.

Dr. Bazzano conducted a physical exam of France. No one was in the exam room

---

1. Hunter testified at the May 16, 2007 hearing on the Petition, that she had not spoken to France but that Kelly, her "Chief Deputy had been dealing with the case from the beginning."

with France and Dr. Bazzano when the exam was conducted. In evaluating France's mental state, Dr. Bazzano talked with France, asked questions, and reviewed the DHSS's Summary that was provided to him. Dr. Bazzano concluded that France suffered from hypertension and dementia. France attempted to controvert the details of the exam; however, she ultimately conceded that she may have forgotten them. France noted documentation that revealed she filled out a patient information form, and the examination information in Dr. Bazzano's record was accurate.

Based on his examination, Dr. Bazzano signed a Medical Certificate, which was completed by someone else. Dr. Bazzano indicated this was not an unusual practice and that the findings in the Medical Certificate reflected his professional expert opinion regarding France's condition on May 15, 2007. Dr. Bazzano testified he did not sign a blank Medical Certificate; the certificate was filled out when he signed it. Dr. Bazzano affirmed that the content of the Medical Certificate was accurate based on his evaluation of France.

Dr. Bazzano had no further communication with anyone from the office of the Jasper County Public Administrator after signing the Medical Certificate. Dr. Bazzano understood the Medical Certificate would be used in a guardianship or conservatorship proceeding. Aside from providing a Medical Certificate, Dr. Bazzano was unaware of the status of the guardianship and conservatorship proceedings in May 2007.

On May 16, 2007, a hearing was held to consider the Petition. McKinney informed the Probate Division she believed it was in France's best interests to have a guardian and conservator appointed. Hunter testified that it was her understanding France had an estranged daughter named Dolores Forste ("Forste"). Forste lived out of state at this time and DHSS's Summary indicated France's family had been contacted, but did "not want the responsibility." However, no notification was provided to Forste regarding the guardianship and conservatorship hearing. That same day, the Probate Division entered its "Trial Findings and Judgment" ("Judgment"), determining that France was "incapacitated by reason of dementia and depression," and appointed Hunter as her guardian and conservator. In its Judgment, the Probate Division noted that France did not appear in person but by McKinney, and McKinney waived trial by jury on behalf of France. Neither the Judgment, nor order appointing Hunter as guardian and conservator of France were ever appealed.

On March 4, 2008, France filed a "Motion to Set Aside the Order Granting Letters of Guardianship and Conservatorship."

On May 7, 2008, France filed a "Motion to Void Appointment of Rita Hunter as Guardian and Conservator in Order issued May 16, 2007," "Motion to Quash Service and Dismiss the Case of Rita Hunter Requesting Appointment as Guardian and Conservator in That This Court Lacks Subject Matter Jurisdiction," and "Motion to Void the Emergency Appointment of Rita Hunter as Guardian Ad [sic] Litem and Conservator Ad [sic] Litem in Order issued April 25, 2007"

On May 7, 2008, the Probate Division entered its "Order and Judgment" stating:

> After having considered these matters and the argument of counsel, it is the Order and Judgment of this court that the Letters of Guardianship Ad [sic] Litem of Incapacitated Person, Letters of Conservatorship Ad [sic] Litem of Disabled Person issued April 25, 2007, the Letters of Guardianship of Incapacitated Person and Conservatorship of Disabled

Person issued May 16, 2007, and the Trial Findings and Judgment entered May 16, 2007, are all hereby set aside.

On August 27, 2008, in a docket entry, the Probate Division restated its Order and Judgment of May 7, 2008, and set forth the reasons for its May 7, 2008 Order and Judgment. The Probate Division stated that following a determination that there had not been compliance with section 475.075 [2] in providing the name and address of any child over the age of eighteen and failing to provide notification of the hearing to such children, the appointment of conservatorship and guardianship were set aside. The Probate Division dismissed the cause without prejudice. The Order and Judgment was not appealed.

On May 12, 2009, France filed a "Petition for Damages" alleging six counts against Respondents. Specifically, in Counts 1, 2, 3, and 6, France alleged that Hunter and Kelly violated her civil rights by acting as her guardian and conservator from April 25, 2007 to May 7, 2008, in seizing the property and person of France, while allegedly knowing that the order appointing Hunter as France's guardian and conservator was void due to procedural deficiencies in the guardianship and conservatorship proceedings, and that Dr. Bazzano agreed to act jointly with Hunter and Kelly to deprive France of her right to freedom and control of her property through the use of forged medical documents and voided court orders, and was acting under color of state law in doing so.

Counts 4 and 5 were for State causes of action for false imprisonment.

On July 1, 2010, Dr. Bazzano filed his Motion for Summary Judgment arguing he was a private actor not subject to liability for deprivation of rights under section 1983.

On July, 12, 2010, Emma France died; Respondents filed suggestions of death, and a motion for substitution of Forste for France was filed.[3]

On October 12, 2010, Hunter and Kelly filed their "Motion for Summary Judgment." The motion alleged, in part, that Hunter and Kelly were entitled to judgment as a matter of law on the following grounds: (1) France's section 1983 claims in Counts 1 through 3 are most closely analogous to a state law claim of false imprisonment and do not survive France's death; (2) France's claims are barred because she failed to seek an adequate remedy in the Probate Division of the trial court; and (3) Hunter and Kelly are immune from suit under the doctrines of qualified immunity, official immunity, and judicial immunity.

The motions for summary judgment were taken up on April 26, 2011.

On June 6, 2011, the trial court entered summary judgment in favor of Respondents, without specifying the basis. France timely appealed.

On appeal,[4] France alleges the trial court erred in sustaining Hunter and Kel-

---

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

3. Forste admits that Counts 4 and 5 for false imprisonment abated with France's death.

4. France's points relied on fail to comply with Missouri Court Rule 84.04 (2011) in that they do not state concisely the legal reasons for France's claims of reversible error, nor do the points explain in summary fashion why, in the

context of the case, the legal reasons that support the claims of error as required by Rule 84.04(d)(1)(B) and (C). Rule 84.04 violations are grounds for a court to dismiss an appeal. *Wheelhouse Marina Real Estate, L.L.C. v. Bommarito*, 284 S.W.3d 761, 767 (Mo.App. S.D.2009). However, because we do not find France's brief is so deficient as to impede our disposition on the merits, we choose to review France's appeal. *Id.*

ly's motion for summary judgment because: (1) under Missouri law a cause of action that is not named in sections 537.020 or 537.030 does not abate and the actions alleged by France in Counts 1 through 3 are civil rights actions and not false imprisonment claims; (2) the Probate Division's orders were void in that Hunter did not follow section 475.075; (3) Missouri law does not give the public administrator any immunities and Hunter and Kelly are held to the same standards of conduct and liability as any guardian or conservator; and (4) under Missouri and federal law if a well-established right exists that a reasonable person should know about, and that right is violated, there is no qualified immunity. France also alleges the trial court erred in sustaining Dr. Bazzano's motion for summary judgment because Missouri law allows liability for private actors who act in concert with State actors, and there were material issues of fact indicating Dr. Bazzano acted in concert with Hunter in taking France's freedom and property from her. The primary issues pertinent to resolution of this appeal are:

1. Are Hunter and Kelly entitled to summary judgment based upon qualified immunity in that not every reasonable public official would have known that acting pursuant to a facially valid order of the Probate Division issuing letters of guardianship and conservatorship was a violation of France's constitutional rights?

2. Is Dr. Bazzano entitled to summary judgment as a matter of law because there were no material issues of fact indicating Dr. Bazzano was acting in concert with Hunter and Kelly?

## Standard of Review

■ Appellate review of a grant of summary judgment is *de novo*. *Kinnaman–Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 764 (Mo. banc 2009). Summary judgment will be upheld on appeal if there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). When the moving party is the defendant, summary judgment can be established by showing one of the following:

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381 (emphasis in original). Once the movant has made such a showing, the burden shifts to the non-movant to show that one or more of the material facts shown by the movant not to be in dispute, is actually genuinely disputed. *Crow v. Crawford & Co.*, 259 S.W.3d 104, 113 (Mo.App. E.D. 2008). "The non-movant may not rest upon the allegations and denials of the pleadings, but rather must use affidavits, depositions, answers to interrogatories, or admissions on file to show the existence of a genuine issue for trial." *Id.* "A genuine dispute is one that is real, not merely argumentative, frivolous, or imaginary." *Id.*

■ "The Court reviews the record in the light most favorable to the party against whom summary judgment was entered." *Kinnaman–Carson*, 283 S.W.3d at 764. " 'The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the

propriety of sustaining the motion initially.'" *Id.* (quoting *ITT Commercial Fin.,* 854 S.W.2d at 376). Summary judgment is an extreme and drastic remedy and we exercise great caution in affirming it because the procedure cuts off the opposing party's day in court. *ITT Commercial Fin.,* 854 S.W.2d at 377. When the trial court grants summary judgment without specifying the basis upon which it was granted, as is the case here, this Court will uphold the decision if it was appropriate under any theory. *English ex rel. Davis v. Hershewe,* 312 S.W.3d 402, 404 (Mo.App. S.D.2010). As such, France's fourth and fifth points on appeal are dispositive and we need only address them.

### Summary Judgment Appropriate for Hunter and Kelly

France's fourth point on appeal alleges the trial court erred in sustaining Hunter and Kelly's motion for summary judgment based on qualified immunity. We disagree.

A section 1983 claim requires that: "1) defendant deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and 2) defendant was acting under the color of state law at the time of the conduct constituting the deprivation." *Foremost Ins. Co. v. Public Serv. Comm'n of Missouri,* 985 S.W.2d 793, 796 (Mo.App. W.D.1998). However, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd,* —— U.S. ——, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (internal quotation and citation omitted). Public officials are provided qualified immunity for their official acts unless a plaintiff pleads facts showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft,* 131 S.Ct. at 2080; *Rustici v. Weidemeyer,* 673 S.W.2d 762, 772 (Mo. banc 1984). Courts may tackle either prong of the qualified immunity analysis first. *Ashcroft,* 131 S.Ct. at 2080. Here, France has failed to show any disputed issues of material fact that would satisfy the second prong, and thus defeat qualified immunity.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft,* 131 S.Ct. at 2083 (internal quotations and citation omitted). France argues Hunter and Kelly violated France's clearly established rights because the right to be free and own property is well established and known; certainly the right to be free and own property is well established and known. France's argument, however, lacks any explanation as to why Hunter and Kelly's actions were a knowing violation of France's rights as they were proceeding pursuant to a facially valid court order at the time. France's argument fails to direct this Court to particular conduct in the record that would defeat qualified immunity, and in our review, we find none.

It is undisputed that the Probate Division appointed Hunter as the temporary guardian and conservator of France on April 25, 2007, and guardian and conservator of France on May 16, 2007. This appointment was never challenged in the Probate Division until March 4, 2008. France has made no showing that every reasonable public official would have known that acting pursuant to the Probate Division's facially valid order was a viola-

tion of France's constitutional rights.[5] In fact, the circumstances—France's continued participation in various financial scams, her hospitalization, and DHSS's investigation results—indicated a genuine need for France to have a conservator and guardian. While the appointment of the guardian and conservator was eventually set aside on May 7, 2008, due to a purported failure to provide appropriate statutory notification to France's daughter, this does not negate the fact that Hunter and Kelly were acting pursuant to the Probate Division's order at the time of the allegations in Counts 1 through 3, and 6. Additionally, Hunter even informed the Probate Division that France had a daughter; it was the Probate Division's position to determine whether a guardianship and conservatorship was appropriate—not Hunter's as the Public Administrator.

We do not find that every reasonable public official would have known that acting pursuant to an order of the Probate Division issuing letters of guardianship and conservatorship was a violation of France's constitutional rights, and that the proper action was to ignore the Probate Division's order and do nothing for France, especially in light of the circumstances showing she needed emergency assistance. France has not presented any issues of material fact that would negate this finding. Accordingly, Hunter and France are entitled to summary judgment based on qualified immunity.

### Summary Judgment Appropriate for Dr. Bazzano

Finally, France alleges that Dr. Bazzano is not entitled to summary judgment as a matter of law because there are material issues of fact indicating Dr. Bazzano was acting in concert with Hunter and Kelly in taking France's freedom and property from her. We disagree.

 Counts 1 and 6 of France's petition are the only counts seeking recovery from Dr. Bazzano, and both seek recovery based upon section 1983 claims. Section 1983 and the Fourteenth Amendment are not aimed at private action; rather, they are aimed to protect such deprivations which occur "under the color of state law" or "state action." *Ross v. Ford Motor Credit Co.*, 867 S.W.2d 546, 550–51 (Mo.App. W.D.1993). There is no dispute that Dr. Bazzano is a physician who maintains a private practice in Missouri and Kansas, and that Dr. Bazzano is not an employee of the federal government, the state of Missouri, the state of Kansas, Jasper County, or the office of the Jasper County Public Administrator. Thus, to make a section 1983 case for damages against Dr. Bazzano, it is not enough to simply show that he deprived a person of constitutionally protected rights. *Id.* at 550. "Under [section] 1983, a plaintiff must establish not only that a private actor caused a deprivation of constitutional rights, but that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy." *Dossett v. First State Bank*, 399 F.3d 940, 951 (8th Cir.2005).

Dr. Bazzano's Motion for Summary Judgment, with the material in support, made a *prima facie* showing that he was

---

**5.** The uncontroverted facts also show France received notice of the hearing on May 16, 2007. Additionally, France had a court-appointed attorney who did not object to the issuance of emergency letters of guardianship and conservatorship, who recommended that her client not attend the May 16, 2007 hearing, who appeared on France's behalf at the hearing, who recommended that a guardian and conservator be appointed for France, and who waived France's right to a jury.

entitled to judgment as a matter of law because France could not establish the conspiracy element of the section 1983 claim, and thus the burden shifted to France to show a genuine issue of material fact remained. France generally denied many of the facts alleged in Dr. Bazzano's Statement of Uncontroverted Facts; however, this is insufficient to create a genuine issue of material fact as most of the denials do not properly use affidavits, depositions, answers to interrogatories, or admissions on file to show the existence of a genuine issue for trial, and thus are deemed admissions. *See Crow*, 259 S.W.3d at 113. While there are some facts that remain in dispute, there are no facts in the record, which if resolved in favor of France, could show a mutual understanding occurred between Dr. Bazzano and Hunter and Kelly to deprive France of her rights.

█ While France generally alleges there are material facts in dispute that show Dr. Bazzano acted in concert with Hunter and Kelly to violate France's rights, the only allegedly disputed facts France specifies in her argument concern: (1) Dr. Bazzano's actions during the actual examination; and (2) when and who completed the substantive portion of the Medical Certification that Dr. Bazzano signed.[6] Even assuming that these facts were resolved in favor of France's account of the events, they do not establish Dr. Bazzano reached a mutual understanding with Hunter or Kelly to deprive France of her rights. It is undisputed that Dr. Bazzano did not communicate with Hunter, Kelly, or anyone else from the office of the Jasper County Public Administrator prior to France's May 15, 2007 appointment. While it is unfortunate if a thorough and complete exam was not administered by Dr. Bazzano, this fact would not demonstrate a conspiracy. Similarly, Dr. Bazzano admitted to signing a form that he did not complete himself but this fact, without additional evidence, also does not establish a mutual understanding between Respondents.[7]

France emphasizes the "most important" fact not in dispute is that Bazzano was aware of the purpose that France was brought for examination, and that the purpose of the Medical Certificate was to be used in guardianship and conservatorship proceedings. France does not elaborate on the significance of this fact and we are left unpersuaded that this is indicative in any way of the requisite conspiracy for a section 1983 claim involving a private actor. It is axiomatic that a physician needs to know the purpose in conducting an examination of a patient in order to make a proper assessment and understand the implication of signing a medical certificate. This Court is unaware of any requirement, much less any benefit from, requiring doctors to be ignorant as to the purpose of their examinations.

France has failed to direct us to anything in the record from which a trier of fact could conclude Dr. Bazzano and Hunt-

---

6. Dr. Bazzano had no role in the Probate Division's initial determination that France required a temporary guardian and conservator. The Probate Division's determination was based upon DHSS's investigation Summary, and the recommendations of Dr. Ragade and McKinney that a guardianship and conservatorship were needed.

7. France continually asserts that Dr. Bazzano signed a blank medical certificate. However, aside from bare accusations, France cites no portion of the record that actually supports such an assertion, and thus has not sufficiently shown a genuine issue for trial. Dr. Bazzano's testimony that he does not sign blank forms, that the Medical Certificate contained his opinion and was accurate based on his assessment of France, was uncontroverted.

er and Kelly had a mutual understanding to deprive France of her rights—an essential element of France's section 1983 claim. Because France has failed to show any disputed material fact exists that would tend to show Dr. Bazzano had a mutual understanding with Kelly and Hunter, Dr. Bazzano is entitled to summary judgment as a matter of law.

As such, the judgment of the trial court is affirmed.

BATES and SCOTT, JJ., Concur.

**J.S., Respondent,**